**William BECKER, Respondent,**

v.

**ALLOY HARDFACING &
ENGINEERING CO., et
al., Appellants.**

**No. C6-85-2340.**

Court of Appeals of Minnesota.

July 15, 1986.

Review Granted Sept. 24, 1986.

Thomas M. Neuville, Grundhoefer & Neuville, P.A., Northfield, for respondent.

Jan Stuurmans, Stuurmans & Karan, P.A., Minneapolis, for appellants.

Heard, considered and decided by RANDALL, P.J., and LANSING and HUSPENI, JJ.

## OPINION

LANSING, Judge.

William Becker brought suit against appellants Alloy Hardfacing & Engineering Co., William Aulik, and Mark Aulik for defamation, unpaid wages, and wage penalties after he was discharged from a sales job at Alloy. The defendants appeal from a judgment and order denying a new trial,

claiming error in the jury instructions, error in evidentiary rulings, and insufficiency of the evidence. Becker filed a notice of review, arguing the trial court erred in failing to award him wage penalties and attorney's fees. We affirm and remand.

## FACTS

William Becker did not complete high school but has worked successfully in the construction and waste processing industries for most of his life. In 1974 he formed his own corporation, Environmental Resources, Inc., which functioned until 1979, when the corporation declared bankruptcy. Then in his mid-fifties, Becker began looking for a job.

In November 1980 Becker obtained employment as a sales representative for Alloy Hardfacing & Engineering Co. Alloy manufactures equipment used in the rendering of animal parts. The company is owned by William Aulik, and his son, Mark Aulik, is general manager.

Becker started at a salary of $24,000 a year, which was to be reviewed in 90 days. The review was postponed until June 1981, at which time the Auliks indicated they were pleased with Becker's performance. Becker said his salary was increased to $30,000; the Auliks said Becker's salary remained the same, but they began issuing him separate checks each week, as an advance against commissions, that equaled $6,000 per year. Becker also received a company car and a $1,500 check: Becker testified the sum represented a retroactive car allowance of $250 per month for six months; the Auliks testified the money represented, again, an advance against Becker's commissions. The Auliks testified they intended to reconcile the advances against commissions earned on an annual basis. Becker denied that any sums he received were advances.

All appeared to go well for Becker until early June 1982, when Becker attended a company sales seminar. One evening after the seminar Becker had a conversation with two other Alloy sales representatives in which he criticized Mark Aulik's handling of the Fritz Co. account. One of the sales representatives, Grey Crystal, reported Becker's comments to the Auliks.

On July 19, 1982, the Auliks summoned Becker to a meeting, supposedly regarding one of Becker's accounts. Instead, when Becker arrived, they gave him a letter stating that "in light of recent events" they could no longer retain him as a sales representative. In the letter the Auliks offered Becker the alternative of working as a manufacturer's representative on a commission-only basis. The letter stated that Becker had 24 hours to consider the offer. If he declined it, he was to return the company credit cards and the company car.

Subsequent events are disputed. Becker testified that the Auliks began swearing and screaming at him. Becker believed, based on prior experience, that Bill Aulik had been drinking. Becker decided to leave rather than subject himself to further verbal abuse. The Auliks ran after him into the parking lot and demanded the keys to the car. Becker, who lives about 35 miles from the office, had no other way to get home because the meeting had taken place after everyone else had left the plant for the night. Becker said he told the Auliks that the letter gave him 24 hours, and he would return with his decision and the car the next day.

The Auliks testified that Becker became upset and that the situation deteriorated to the point where it was clear Becker would not accept the alternative position with Alloy. Bill Aulik testified he did not want Becker to drive the company car because Becker was too upset to drive. In an attempt to keep Becker from leaving the premises, Mark Aulik called the Bloomington police. Becker left before the police arrived. The Auliks reported the automobile stolen to the Bloomington police department and to the sheriff's departments of Rice and LeSueur Counties.

Mark Aulik then called Becker's home. Because William Becker had not yet arrived home, Aulik spoke with Grace Becker. She testified that Aulik said Becker

was "a hell of a salesman" and could make good money as a manufacturer's representative. Becker returned to the plant that evening with his wife and left the car parked in the loading dock area. Becker said his sales manual and price list were in the trunk of the car; his customer list was on his desk in the office. Becker turned the credit cards over to a Bloomington detective the next day.

On July 20, John Randall, then the plant superintendent at Alloy, arrived at work and found Becker's car parked in the loading dock. Randall called Mark Aulik because he needed keys to move the car before a shipment arrived. Mark Aulik brought the keys and looked through the car. Randall testified he did not know whether Aulik removed anything from the car, but said when he cleaned the car out later there were no materials in the trunk. The car was then given to Grey Crystal, the employee who had reported Becker's criticisms to the Auliks. All the papers and files in Becker's desk were removed and stacked in Bill Aulik's office.

Within a few weeks Becker obtained a sales position with Anderson International, a Cleveland-based company that was a competitor of Alloy's. When Bill Aulik discovered where Becker was working, he said to John Randall that he was going to "take care of that particular problem."

On August 6, 1982, the Auliks sent letters, through their attorney, to the president of Anderson International and to Becker's attorney, in which they accused Becker of retaining "confidential business property of Alloy including Alloy customer lists, Alloy price lists, and the Alloy sale manual." The letter threatened legal action, including suit for conversion and injunctive relief, against Becker and Anderson International.

The Auliks contended it was not until after they sent the letter that they discovered Grey Crystal was using Becker's sales manual and price list, which they said Crystal found in the trunk of the car Becker had used. Bill Aulik said he never looked through the materials taken from Becker's

office, even though the materials were stacked in his own office for months. Mark Aulik was impeached at trial with his deposition testimony, in which he said he knew Becker's customer list was left on Becker's desk. The Auliks never notified Anderson International of the purported discovery.

Becker brought this suit for defamation, unpaid wages, and wage penalties. Alloy contended it owed no wages to Becker after offsetting advances against commissions, unsubstantiated business expenses, and certain expenses associated with the Fritz account. The jury found by special verdict that Becker was entitled to all wages claimed, amounting to about $2,100, and offset $62 in personal expenses. In addition, the jury found that the stolen vehicle reports and the letter to Anderson International contained false statements, that the Auliks knew they were false, that a reasonable business person in the same circumstances would not have made those statements, and that the statements were made "in willful indifference or deliberate disregard" for Becker's rights. The jury awarded Becker $30,000 in actual damages and $30,000 in punitive damages ($10,000 was assessed against Alloy and each of the Auliks). On appeal, Alloy and the Auliks are represented by different counsel.

## ISSUES

1. Was the trial court's failure to instruct the jury that punitive damages must be proved by clear and convincing evidence prejudicial error?

2. Did the trial court err in failing to instruct the jury on conditional privilege and actual malice or in instructing the jury on general damages?

3. Did the trial court abuse its discretion in admitting the deposition testimony of a former Alloy employee?

4. Is the evidence sufficient to support the jury's finding that Becker was injured, and are the damages excessive?

5. Did the trial court err in refusing to award Becker wage penalties and attorney's fees?

## ANALYSIS

### I

■ To recover punitive damages the plaintiff must show by clear and convincing evidence that the acts of the defendant show a willful indifference to the rights or safety of others. Minn.Stat. § 549.20, subd. 1 (1984). The trial court instructed the jury on the preponderance-of-evidence burden of proof and gave the following instruction on the burden of proving punitive damages:

Punitive damages are awarded only if it is necessary to punish the defendant so as to deter him from doing the same thing again or so far as it gets known publicly to stop others from doing the same thing again. So punitive damages are only awarded if it is necessary to punish in order to prevent a reoccurrence of the incident. Now, therefore, in order for there to be punitive damages it must be necessary that the defendant acted with willful indifference, which are pretty strong words, willful indifference, or with deliberate disregard. Again, strong words, deliberate disregard. These words are in the verdict form for you. You must find this if there are to be any punitive damages.

In earlier discussions with the trial court, the plaintiff requested an instruction on the clear and convincing evidence burden of proof. The defendants never objected to the instruction as given, but raised the error in a motion for a new trial.

Fundamental errors of law in jury instructions are reviewable on appeal so long as they have been assigned as errors in the motion for a new trial. Minn.R.Civ.P. 51; *Lewis v. Equitable Life Assurance Society of the United States*, 389 N.W.2d 876 (Minn.1986). Reversal is not required, however, unless the error in instructions was prejudicial. *Id.*

Assuming the error is fundamental, we conclude a new trial is not required because the giving of a correct instruction would not have changed the result. *See id.* at 885–886. The jury awarded $30,000 in punitive damages based on findings that the Auliks made false statements with the intent to harass Becker and that the statements were made with willful indifference or deliberate disregard for Becker's rights. Although the determination of whether the evidence is clear and convincing is ordinarily for the trier of fact, the record discloses clear and unequivocal testimony which the jury found convincing. The jury's answers to the special verdict form show that the jury believed Becker's testimony and disbelieved the Auliks on all critical facts. The evidence consistent with the verdict showed that the Auliks had a history of firing employees for vindictive reasons, they were held in low esteem among workers at the plant because they enjoyed insulting and humiliating others, and they had a reputation for being dishonest and profane.[1] Becker, on the other hand, had a reputation for being an honest and conscientious worker.

In this case the burden of proof was placed on the proper party, but the quantum of proof was stated incorrectly. In *Hield v. Thyberg*, 347 N.W.2d 503 (Minn. 1984), the supreme court held that, under the facts of that case, such an error was reversible. We do not read *Hield* to say reversible error occurs *whenever* an erroneous quantum-of-proof instruction is given. We conclude that this error was harmless and that the judgment is consistent with substantial justice. *See* Minn.R.Civ.P. 61.

### II

■ In addition, appellants contend the trial court erred in failing to instruct the jury on conditional privilege and actual

---

1. There is also evidence that Alloy had in the past manufactured Anderson International parts without Anderson's permission. Becker argued that, by jeopardizing his job, the Auliks were trying to intimidate him into not revealing these activities.

malice and erred in instructing on general damages. A conditional privilege exists when a communication is made on a proper occasion, from a proper motive and is based on reasonable or probable cause. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 256–57 (Minn.1980). If a conditional privilege exists, the plaintiff can recover only if actual malice is proved. *Id.* at 257.

The special verdict form did not use the words "privilege" or "malice," but framed the questions in terms of whether the statements were made to harass Becker, whether a reasonable business person would have made them, and whether the statements were made with willful indifference or deliberate disregard for Becker's rights. The elements of privilege were encompassed by these questions. The jury's findings that the Auliks intended to harass Becker and that their actions were not reasonable are fully supported by the record. These findings are equivalent to a finding of improper motive. There was therefore no privilege and no need for Becker to show malice.

Appellants did not object to the trial court's instruction on damages, nor did they raise the error in their motion for a new trial. Therefore, the issue is not properly before the court. *See Sauter v. Wasemiller*, 389 N.W.2d 200 (Minn.1986).

### III

■ John Randall, the former plant supervisor for Alloy, was not available as a witness at trial. His deposition testimony was read to the jury, over appellants' objection. They did not, however, raise this evidentiary issue in their motion for a new trial. The issue is not properly before the court. *See id.*

### IV

■ Appellants contend that the evidence is insufficient to support the jury's finding that Becker was injured and that the damages awarded are excessive.

Becker testified that his reputation for honesty was extremely important to him. The Auliks told three police departments and at least one other person at Alloy that Becker had stolen the car. Becker was mortified by the fact that the police went to his home to investigate the stolen vehicle report and, while there, discussed the incident with one of his children. He felt stress at the prospect of obtaining a new job at his age without the kind of reference he deserved from the Auliks. In addition, he felt pressure at his new job to work longer hours as a result of the letter, and he returned home to visit his family less often. The evidence is sufficient to sustain the jury's finding that Becker sustained injury as a result of the defamatory statements.

■ A false accusation of a crime is libel per se, and general damages to one's reputation are presumed. *Anderson v. Kammeier*, 262 N.W.2d 366, 371 (Minn.1977). Similarly, general damages are presumed from false and defamatory statements affecting one's business reputation. *Stuempges*, 297 N.W.2d at 259. Damage awards are almost exclusively in the province of the jury. *See id.* Neither the actual damages nor the punitive damages are so excessive as to be unreasonable.

### V

Appellants concede that Becker is entitled to wage penalties under Minn.Stat. § 181.13 (1984). *See also Hruska v. Chandler Associates, Inc.*, 372 N.W.2d 709, 716 (Minn.1985). We remand for calculation of the penalty due on the wages the jury found owing to Becker.

Becker also contends the trial court abused its discretion in refusing to award him attorney's fees, which he requested on the basis that appellants' counterclaim for defamation, which was dismissed shortly before trial, was brought in bad faith. An award of attorney's fees under Minn.Stat. § 549.21 may be reversed only for an abuse of discretion. We find no abuse of that discretion.

## DECISION

We affirm the judgment and remand for calculation of wage penalties under Minn. Stat. § 181.13.

Affirmed and remanded.

HUSPENI, J., dissents.

HUSPENI, Judge (dissenting in part).

I respectfully dissent as to the first issue only and conclude that the trial court's failure to instruct the jury on the proper burden of proof for punitive damages compels a new trial.

I submit that the majority is making a determination regarding the weight to be given evidence that only a jury should make. This jury was not given an opportunity to decide properly the punitive damages issue. It was not informed that the burden of proof for those damages was higher than the burden of proof which was applicable to other issues in the case.

Neither can I distinguish this matter from *Hield v. Thyberg*, 347 N.W.2d 503 (Minn.1984). In that case the supreme court reversed and remanded for a new trial, ruling that the trial court properly allowed the plaintiff to introduce parol evidence but erred in requiring that the plaintiff only prove his case by a preponderance rather than by clear and convincing evidence.

Appellant's acts were harsh and inappropriate. However, I am unable to conclude as a matter of law that the clear and convincing burden of proof for punitive damages has been met. The jury should decide that issue. *See Wallinga v. Johnson*, 269 Minn. 436, 131 N.W.2d 216 (1964).