401 N.W.2d 655 (1987)
William BECKER, Respondent,
v.
ALLOY HARDFACING & ENGINEERING COMPANY, et al., Petitioners, Appellants.
No. C6-85-2340.
Supreme Court of Minnesota.
March 6, 1987.
*656 Jan Stuurmans, Minneapolis, for appellants.
Thomas M. Neuville, Northfield, for respondent.
Heard, considered, and decided by the court en banc.
AMDAHL, Chief Justice.
Respondent William Becker ("Becker") filed suit against appellants Alloy Hardfacing & Engineering Company ("Alloy") and Alloy's officers William Aulik and his son Mark Aulik, seeking damages for defamation, unpaid wages, and wage penalties following his dismissal as a salesman for Alloy. The jury returned a special verdict awarding Becker $2,107.18 in unpaid wages, $30,000 in compensatory damages, and $30,000 in punitive damages, and the trial court entered judgment. Alloy and the Auliks appealed from the trial court's denial of post-trial motions for judgment notwithstanding the verdict ("JNOV") or a new trial.
The Court of Appeals held that the trial court had failed to instruct the jury that a clear and convincing evidence standard of proof applied to punitive damage awards, but found the error to be nonprejudicial. The Court of Appeals affirmed the trial court in all other respects and remanded for a determination of wage penalties. We affirm in part and reverse in part, having determined that the trial court's omission of a clear and convincing evidence instruction on punitive damages was prejudicial error. We affirm the Court of Appeals with respect to the other issues presented.
William Becker was employed by Alloy as a salesman from November 1980 to July 1982. Alloy manufactures and sells machines used in the animal rendering business. Becker started at a base salary of $24,000. In July 1981, Alloy gave Becker use of a company car and a set of gasoline credit cards. Becker also began receiving separate checks totaling $500 per month, in addition to his base salary. The check stubs listed the payments as advances on commissions, although Becker believed it was an increase in his base salary. Becker also received $1,500 which he thought was payment for previous car expenses; Mark *657 Aulik testified it was also an advance on commissions.
On July 19, 1982, Becker was called into a late meeting with the Auliks. William Aulik handed Becker a letter stating that "in consideration of recent events," Becker would be terminated from his position as Alloy sales representative. The "recent events" referred to in the letter were alleged derogatory remarks about Alloy management made by Becker to other salesmen. The Auliks gave Becker the option of working independently and on commission as a manufacturer's representative rather than as a salaried employee. The letter indicated Becker had until 4:30 the next day to either accept the position or resign and turn in his sales materials and building and vehicle keys.
At trial, Becker testified that the Auliks screamed obscenities at him and pressed him for an immediate decision during the meeting. Becker also testified that he did not think he could rationally discuss the situation with the Auliks at the time because it appeared that William Aulik had been drinking. Becker stated that he decided to go home, think about the situation for 24 hours, and give the Auliks his decision the next day. Becker made his way to his company car to drive home, but the Auliks told him he could not take the car. Becker, who lived 35 to 40 miles away from the plant, had no other way to go home and, based on the letter, felt he had a day to make his decision. He thus drove the car away with the intent of returning it the next day. Becker tried to reach his attorney in Northfield before going home but could not contact him. Becker then phoned home, and his wife informed him that the Auliks had called and demanded Becker return the car that night or a stolen car report would be filed. In fact, the Auliks had already filed a stolen car report with the police. Becker returned the car that evening. He testified that he left all his company sales materials either in his car or at his desk.
The Auliks denied at trial that William Aulik had been drinking and denied that Becker had 24 hours to return the company car and property. The Auliks argued that Becker was given a day to decide whether to take the job offer, but was required to immediately return the company property. Mark Aulik stated that Becker went out of the door after reading the letter and ignored requests to turn over the car keys and credit cards. Mark Aulik called the police in an attempt to have Becker stopped because Aulik was concerned Becker was too emotionally upset to drive safely. The police arrived after Becker had already left, so the Auliks filed a stolen vehicle report. The next day, Becker received a call from Bloomington police indicating he should return Alloy's credit cards by 4:30 p.m. or a criminal complaint would be issued. Becker returned all the credit cards to the police.
John Randall, a plant superintendent at Alloy, discovered the car on the Alloy premises the day after it was returned. Mark Aulik testified he inspected the car and did not find any sales materials in the vehicle. The car was given to another salesman, Gray Crystal, to use starting that day. It was later determined that the sales manual which Becker was subsequently accused of stealing was actually left in the trunk of the car, where it was found by Gray Crystal and taken for his own use. The records and files left on Becker's desk were moved into William Aulik's office. Mark Aulik testified by deposition that he knew some of the customer lists that Becker was later accused of stealing were actually left by Becker at his desk.
After his dismissal from Alloy, Becker obtained a sales position with Anderson International ("Anderson"), a manufacturing company whose products Alloy sold and distributed. When the Auliks discovered Becker was working for Anderson, William Aulik indicated to Randall that Aulik was going to be calling Anderson "and taking care of that particular problem."
On August 6, 1982, after Becker began work with Anderson, the Auliks' attorney sent a letter to Anderson's president accusing *658 Becker of keeping confidential business property belonging to Alloy. The letter warned that if Anderson attempted to use any of Alloy's business records allegedly kept by Becker, Alloy would file suit. Alloy never directly contacted Becker regarding the business information allegedly missing prior to sending the accusatory letter to Anderson. After the materials were found, neither Alloy nor the Auliks sent a retraction of the letter sent to Anderson.
Becker filed suit in Hennepin County, seeking wages allegedly owed for work prior to termination, wage penalties on the amount owed, damages for alleged defamatory statements made about Becker to Bloomington police, and damages for alleged defamatory statements made in the letter sent to Anderson. Appellants defended on the grounds that the statements were not libelous and that any amounts owed to Becker were offset by amounts allegedly owed by Becker to Alloy for private use of the company car and for an alleged unauthorized trip. Appellants also claimed a conditional privilege. Appellants additionally filed a set of counterclaims against Becker, alleging business defamation and fraud. Three weeks prior to trial, however, Alloy dismissed all of its counterclaims against Becker, citing prohibitively high costs to pursue the claims.
Prior to the close of trial, both parties submitted proposed jury instructions. Appellants requested specific instructions on conditional privilege and actual malice. The trial court declined to provide the specific instructions submitted by appellants, relying instead upon the special verdict questions dealing with appellants' motivations for their actions. The court also declined to give an instruction submitted by respondent Becker with respect to the clear and convincing evidence standard applicable to punitive damage awards. Instead, the trial court substituted the following explanation:
Then there is the last type of damages which may or may not apply in this case. It's up to you. They are called punitive damages. It has nothing to do with a person's injury. You may only have been injured to the extent of one dollar which maybe entitles you to punitive damages as a means of punishing. Punitive damages are awarded only if it is necessary to punish the Defendant so as to deter him from doing the same thing again or sofar [sic] as it gets known publicly to stop others from doing the same thing again. So punitive damages are only awarded if it is necessary to punish in order to prevent a reoccurrence of the incident. Now, therefore, in order for there to be punitive damages it must be necessary that the Defendant acted with willful indifference which are pretty strong words, willful indifference or with deliberate disregard. Again, strong words, deliberate disregard. These words are in the verdict form for you. You must find this if there are to be any punitive damages.
Appellants did not object to the jury instructions prior to the close of trial. The jury returned a special verdict awarding respondent backpay and compensatory and punitive damages totaling $62,107.18. Appellants filed post-trial motions for JNOV or a new trial, alleging the trial court committed fundamental error by failing to instruct the jury on qualified privilege, actual malice, and the clear and convincing evidence standard for punitive damages. The trial court denied appellants' motions.
The Court of Appeals, in a 2-1 decision, upheld the jury verdict. The court held that a failure to expressly articulate a clear and convincing evidence standard, while arguably fundamental error, was not prejudicial in the present case because the special jury instructions provided a clear indication that the jury had found clear and convincing evidence justifying punitive damages. Becker v. Alloy Hardfacing & Engineering Co., 390 N.W.2d 374, 378 (Minn.Ct.App.1986). The court found the omission of conditional privilege and active malice instructions to be proper, since the jury findings supported a finding that no privilege existed and that therefore Becker did not have to prove actual malice. Id. at *659 379. The court refused to address allegations that the trial court admitted improper testimony by way of John Randall's deposition at trial, holding the issue precluded since it was not raised in the motion for new trial. Id. Finally, the court held the verdict was not excessive and remanded to the trial court for a determination of wage penalties under Minn.Stat. § 181.13 (1986). Id.
The primary issue to be discussed is whether the trial court committed fundamental error by failing to instruct the jury about the "clear and convincing" evidence standard applicable to punitive damage awards. A finding of fundamental error is necessary because appellants failed to object to the jury instructions at trial, although appellants raised the issue in their motions for JNOV and for a new trial. Minn.R.Civ.P. 51 provides that "[a]n error in the instructions with respect to fundamental law or controlling principle may be assigned in a motion for a new trial though it was not otherwise called to the attention of the court." See Lewis v. Equitable Life Assurance Society of the United States, 389 N.W.2d 876, 885 (Minn. 1986).
The requirement of "clear and convincing" evidence for punitive damages is statutorily imposed. Minn.Stat. § 549.20, subd. 1 (1986), provides that "[p]unitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show a willful indifference to the rights or safety of others." The Jury Instruction Guide for punitive damages, JIG 195, suggests the following explanation of "clear and convincing" evidence:
When I say clear and convincing evidence, I mean that the evidence must lead you to conclude that it is highly probable that the defendant acted with willful indifference to the rights or safety of others. Put another way, the evidence must produce in your minds a firm belief or conviction that the defendant acted in willful indifference for the (rights) (safety) of others.
4 Minnesota Practice: Civil Jury Instruction Guides JIG 195 (West 3d ed. 1986). Respondent acknowledges that the trial court's instructions did not follow the language of the statute or JIG 195, but respondent asserts that the trial court's jury instructions had the effect of imposing a clear and convincing evidence standard.
Our examination of the trial transcript and jury instructions reveals that the trial court told the jury they had to find appellants acted with "willful indifference, or with deliberate disregard." The instructions relate to the issue of actual malice, but does not indicate to the jury what standard of proof they should have applied. Stated differently, there is nothing in the jury instructions indicating that the jury had to find actual malice by anything more than a preponderance of the evidence. The jury instructions, while emphasizing the seriousness of awarding punitive damages, do not indicate the higher burden of proof on a party seeking punitive damages.[1] We hold that the trial court committed fundamental error by failing to instruct the jury regarding the "clear and convincing" evidence standard for punitive damages imposed by Minn.Stat. § 549.20, subd. 1.
Having determined there was fundamental error, we must next decide *660 whether appellants suffered prejudice. Reversal is not required absent a finding of prejudice. See Lewis, 389 N.W.2d at 885. When an issue is submitted to the jury on an erroneous instruction, a new trial should be granted unless it appears as a matter of law that the jury's determination is correct. See Keefer v. Al Johnson Constr. Co., 292 Minn. 91, 103, 193 N.W.2d 305, 312 (1971). The Court of Appeals stated, "[a]lthough the determination of whether the evidence is clear and convincing is ordinarily for the trier of fact, the record discloses clear and unequivocal testimony which the jury found convincing. The jury's answers to the special verdict form show that the jury believed Becker's testimony and disbelieved the Auliks on all critical facts. * * * We conclude that this error [in jury instructions] was harmless and that the judgment is consistent with substantial justice." Becker, 390 N.W.2d at 378.
The Court of Appeals correctly states that the jury found for respondent on all critical facts; that does not answer the key issue, however, of what standard of proof the jury applied. The jury may very well have found that respondent proved all critical facts only by a preponderance of the evidence. If so, then punitive damages would not have been appropriate. We conclude that the failure to provide the jury with proper instructions on the standard of proof was fundamental error and prejudiced appellants. See Hield v. Thyberg, 347 N.W.2d 503 (Minn.1984). We therefore reverse and remand for trial solely on the issue of punitive damages.
Appellants also allege that the trial court erred by admitting the deposition testimony of John Randall, which appellants argue was "highly prejudicial" and "outrageously scandalous." The Court of Appeals, relying on Sauter v. Wasemiller, 389 N.W.2d 200 (Minn.1986), did not address appellants' claim because they failed to raise the issue in their motion for a new trial. In Sauter, we explained the policy supporting the general rule that errors allegedly occurring at trial must be raised in post-trial motions for a new trial:
In our view the motion for a new trial provides both trial court and counsel with a unique opportunity to eliminate the need for appellate review or to more fully develop critical aspects of the record in the event appellate review is sought. Counsel is required to focus the trial court's attention on the specifics of an objection which, though properly framed during trial, might not have been fully explained or the impact of which might not have been understood during trial. The trial court is given time for reflection and the opportunity to consider the context in which the alleged error occurred and the effect it might have had upon the outcome of the litigation. In short, it is given the opportunity to correct its own errors without subjecting the parties and the appellate courts to the time, expense and inconvenience involved in an appeal.
We are cognizant of the assertions that the general rule is overly-technical, time-consuming and requires actions often duplicative of objections raised during trial. However, we conclude that, upon balance, the benefits of a more-considered decision by the trial court and more effective appellate review far outweigh those perceived burdens.
Id. at 201-02. We find that Sauter applies in the present case to preclude review of the trial court's evidentiary ruling.
Appellants additionally contend the trial court erred by failing to instruct the jury about conditional privilege. They claim their statements to law personnel and to Anderson about Becker were subject to a conditional privilege. Without addressing whether a conditional privilege existed, we find that the trial court did not err by omitting instructions on conditional privilege. A conditional or qualified privilege is lost if a plaintiff demonstrates actual malice. Lewis, 389 N.W.2d at 890; Stuempges v. Parke, Davis & Co., 297 N.W.2d 252 (Minn.1980).
The special verdict in the present case indicates the jury determined the police report and letter to Anderson were *661 both false and were made in willful indifference to, or deliberate disregard of, Becker's rights. This finding is supported by testimony that the Auliks had lied about the fact they had already filed a stolen car report before respondent returned the car, that they were aware that some of the documents allegedly stolen by respondent were actually left at his desk, and that William Aulik stated he would be "taking care of that particular problem" when he found out Becker had begun working for Anderson. The jury's finding of actual malice makes the omission of instructions on conditional privilege nonprejudicial to appellants. See Lewis, 389 N.W.2d at 890 ("Even though the jury was not properly instructed on the qualified privilege, it nevertheless found the actual malice which negates the company's entitlement to the privilege. Thus, the company was not prejudiced.").
Appellants argue that this court should abolish the rule that where defendant commits libel per se, general and punitive damages are recoverable without proof of actual damages. Loftsgaarden v. Reiling, 267 Minn. 181, 126 N.W.2d 154 (1964), cert. denied, 379 U.S. 845, 85 S.Ct. 31, 13 L.Ed.2d 50 (1964). We decline to do so. Among those types of actions which are defamatory per se are false accusations of committing a crime and false statements about a person's business, trade, or professional conduct. Anderson v. Kammeier, 262 N.W.2d 366, 372 (Minn.1977).
Recent commentators have suggested that some showing of harm to reputation, either by inference or direct evidence, should be required before allowing recovery of damages. See W. Keeton, D. Dobbs, R. Keeton, D. Owen, Prosser and Keeton on Torts, § 112 at 797 (5th ed. 1984); Restatement (Second) of Torts § 621 (1977). Appellants have failed to convince us that we should overrule long-established precedent in favor of a new rule. We reaffirm the rule that where a defendant's statements are defamatory per se, general damages are presumed. We also hold that the $30,000 compensatory damage award against appellants was not excessive. Becker was upset and embarrassed by the events surrounding the stolen car report, felt that his personal and business reputation had been damaged, and as a result put pressure on himself to work harder and longer hours at Anderson. The jury, believing that Becker had suffered these injuries, did not award an excessive amount of damages.
Finally, respondent asserts that the trial court erred in refusing to award attorney fees against appellants; respondent alleges that appellants filed frivolous counterclaims to harass respondent. On review, this court will not reverse a trial court's award or denial of attorney fees absent an abuse of discretion. See Blattner v. Forster, 322 N.W.2d 319, 321 (Minn. 1982). The trial court denied respondent's request for attorney fees but did not state why. On remand the trial court should state its reasoning for the denial of attorney fees; nothing in the record before us indicates the court's rationale for its ruling. We are thus unable to determine if there has been any abuse of discretion.
We reverse the decision of the Court of Appeals and remand for a new trial on whether respondent is entitled to punitive damages. On remand, the trial court must also determine appropriate wage penalties owed to respondent under Minn.Stat. § 181.13 (1986), and should state why the court denied respondent's request for attorney fees. The remainder of the verdict is affirmed.
Affirmed in part, reversed in part, and remanded.
NOTES
[1] In fact, prior to the trial court's instructions on punitive damages, the court explained to the jury: "We have got a special verdict form on which we have questions. And for each of those questions you should consider the burden of proof. Did the parties persuade you. Now, this is a civil case for money damages so we say you must persuade by a fair preponderance of the evidence. When you put the evidence in the scales of justice to use an example [,] if it tips ever so much toward the party making the claim it's not balanced or if it tips the other way, it tips ever so much in his favor so [sic] then it is more likely true than not. That is the burden of proof they have in this case. * * * The parties, each of them making claims, each must persuade you by a fair preponderance of the evidence that their claim is more likely true than not." The trial court did not later explain the "clear and convincing" evidence standard, and the total record supports the conclusion that the jury applied the preponderance of the evidence standard to all special verdict questions.