**HALLA NURSERY, INC., Respondent,**

v.

**BAUMANN–FURRIE & CO., et al.,
Petitioners, Appellants.**

No. C9–88–2119.

Supreme Court of Minnesota.

May 11, 1990.

Charles E. Lundberg, L.H. May, Jr., Bassford, Heckt, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for appellants.

Keith A. Hanson, Fetterly & Gordon, P.A., Minneapolis, for respondent.

WAHL, Justice.

This appeal arises out of an accountant malpractice action brought by respondent Halla Nursery, Inc., against appellant Baumann–Furrie & Co., an accounting firm, alleging negligent failure of the accountant to discover defalcations in Halla's business. We accepted review, on petition of Baumann–Furrie, of the decision of the court of appeals which held that in an accountant malpractice action for negligent failure to detect embezzlements within the client's business, the client's own contributory negligence in the operation of its business may be raised as a defense only if the client's negligence contributed to the accountant's failure to perform the accounting contract. Baumann–Furrie also seeks review of the court of appeals' holding that the district court did not abuse its discretion in granting Halla a new trial because of the failure of the court to instruct the jury on the effects of its answers to the comparative fault question. We reverse.

Defendants Baumann–Furrie & Co., and Allen L. Furrie, licensed public accountants, provided accounting services to plaintiff, Halla Nursery, Inc., a retail nursery, during the years 1983 through 1985. During this time, Halla's bookkeeper embezzled some $135,000.00 from the company. In 1986, Halla brought this malpractice action against Baumann–Furrie, alleging negligent performance of accounting services in failing to detect the embezzlement activities. Halla also alleged breach of contract, but the case was tried on the theory of negligence. Baumann–Furrie denied liability and raised the affirmative defense of Halla's contributory negligence for, among other things, failing to put in place internal financial controls to protect the company from embezzlement.

On the first day of trial, Halla brought a motion in limine to exclude all evidence of Halla's negligence which did not directly affect Baumann–Furrie's ability to perform the contract and report the truth. The trial court denied this motion and, during the three week trial, admitted evidence of Halla's day-to-day business conduct and practices. The trial court rejected Halla's proposed jury instruction attempting to limit Halla's contributory negligence to any acts or conduct which prevented defendants from detecting the embezzlement. Special verdict questions required the jury to determine whether Baumann–Furrie was negligent in failing to detect the embezzlement while it performed its accounting services for plaintiff and, if so, whether that negligence was a direct cause of damages to plaintiff; whether Halla Nursery was negligent in failing to detect the embezzlement and, if so, whether that negligence was a direct cause of damage to the plaintiff. The standard of care to be applied to Baumann–Furrie was the use of reasonable care in applying that degree of skill and learning which is normally possessed and used by public accountants in good standing, in a similar practice, and under like circumstances. The standard of care to be applied to Halla was the use of reasonable care in the everyday management and operation of the business. The jury was then instructed, if it answered "Yes" to the four preceding questions, to compare the negligence of the two parties and attribute a percentage of fault to each. The trial court cautioned counsel, in chambers, not to comment on the effect of comparative fault, and did not inform the jury, as required by Minn.R.Civ.P. 49.01(2), of the effect of its answers to the comparative fault questions. Halla did not request the Rule 49.01(2) instruction and neither party objected to its omission.

The jury found Halla 80% at fault, and Baumann–Furrie 20% at fault, and assessed damages of $309,761.00. The trial court ordered judgment of no recovery. Halla moved for judgment notwithstanding the verdict or for a new trial. The trial court granted a new trial on the issue of

liability, because it determined that it erred in failing to instruct the jury on the effect of the jury's answers to the comparative fault questions, but did so with reluctance because Halla's negligence was so great. Baumann–Furrie appealed the order for a new trial. Halla filed a notice of review claiming the district court erred by allowing the jury to consider its alleged negligence in apportioning fault in an accountant malpractice action, and by admitting evidence of collateral source recoveries. Halla did not order a transcript. There is neither a transcript nor an agreed-upon stipulation of facts on which to decide the case.

The court of appeals held that the trial court had properly granted a new trial and that at the new trial evidence of Halla's contributory negligence could be raised as a defense only if that negligence directly interfered with Baumann–Furrie's ability to perform the contract in accordance with generally accepted accounting practices. The court of appeals refused to consider the collateral source recovery issue in the absence of a transcript. *Halla Nursery v. Baumann Furrie & Co.*, 438 N.W.2d 400, 403, 404 (Minn.App.1989). We granted review to consider the issues regarding comparative fault and the granting of a new trial. The collateral source recovery issue is not before us.

I.

■ The primary issue raised by the appeal is alternately phrased by the parties as whether comparative fault, pursuant to Minn.Stat. § 604.01 (1988), applies in an accountant malpractice action alleging negligent failure to discover embezzlement in the client's business or whether the contributory negligence of the client may be raised as a defense only where that negligence has contributed to the accountant's failure to perform the contract and report the truth. More succinctly stated, the issue is not whether comparative fault applies, as in light of our cases it does, but whether, in the context of an accountant malpractice action, the scope of the principles of comparative fault should be limited in their application.

The case was tried as a negligence action. The trial court denied Halla's motion in limine and allowed the jury to determine under Minnesota's comparative fault statute, Minn.Stat. § 604.01, whether Halla was negligent in the day-to-day management and operation of its business, and whether that negligence was a direct cause of its damages, then to compare Halla's negligence with that of Baumann–Furrie. The court of appeals reversed, adopting instead the rule of *Lincoln Grain, Inc. v. Coopers & Lybrand*, 216 Neb. 433, 442, 345 N.W.2d 300, 307 (1984), which held that the contributory negligence of a client in an accountant malpractice case is a defense only where it had contributed to the accountant's failure to perform the contract and report the truth. *Halla Nursery*, 438 N.W.2d at 402–03.

The *Lincoln Grain* rule had its genesis in *National Surety Corp. v. Lybrand*, 256 A.D. 226, 236, 9 N.Y.S.2d 554, 563 (1939), which in turn adopted the principle enunciated in the dissent in *Craig v. Anyon*, 212 A.D. 55, 67–68, 208 N.Y.S. 259, 269–70 (1925), *aff'd mem.*, 242 N.Y. 569, 152 N.E. 431 (1926). *Craig* and *National Surety* were the seminal cases in the developing discussion, by the courts and commentators, of the question of contributory negligence as an affirmative defense to an accountant malpractice action. *Craig* was the first case to discuss the principle in any depth.

In *Craig*, the plaintiffs were stockbrokers and commodities brokers who hired the defendant accounting firm to audit their books. After approximately five years of services, during which the accounting firm regularly reported that the company was profitable and the books were proper, the person in charge of plaintiff's commodities department confessed to embezzling over $1,250,000. Plaintiffs sued their accountants alleging breach of contract and negligence. The jury found the accountants liable, and determined the damages to be $1,177,805.26. The appellate court reversed, stating that while it was clear that the accountants were negli-

gent, the plaintiffs were not blameless for their losses.

The plaintiffs, in effect, contend that defendants are chargeable with negligence because of failure to detect Moore's wrongdoing, wholly overlooking the fact that although they were closely affiliated with Moore, who was constantly under their supervision, they were negligent in failing properly to supervise his acts or to learn the true condition of their own business and to detect his wrongdoing.

*Id.* at 67, 212 N.Y.S. at 269. In *Craig,* Justice Clark dissented, reasoning:

> [t]he contract of audit was not one merely to discover if inadvertent clerical errors had been made in the bookkeeping, but was one of protection of the plaintiffs' firm from their own failure to find any error in their books of account. * * * [T]he defendants' work in pursuance of the contract, owing to the manner in which it was performed, failed to save plaintiffs from the consequences of such failure and neglect, which was the very subject of the contract.

*Id.* at 67–68, 212 N.Y.S. at 269–70.

The *National Surety* court followed Justice Clark's dissent. In *National Surety,* during an audit, the accountants failed to discover that a cashier was embezzling funds from a stockbroker. The court rejected the accountant's defense that the client had been contributorily negligent in running its business such that it was impossible to determine that the cashier was embezzling funds. The court stated:

> We are * * * not prepared to admit that accountants are immune from the consequences of their negligence because those who employ them have conducted their own business negligently. * * * Accountants, as we know, are commonly employed for the very purpose of detecting defalcations which the employer's negligence has made possible. Accordingly, we see no reason to hold that the accountant is not liable to his employer in

such cases. Negligence of the employer is a defense only when it has contributed to the accountant's failure to perform his contract and report the truth.

256 A.D. at 235–36, 9 N.Y.S.2d at 563 (citation omitted).

*Craig* and *National Surety* thus delineate two distinct lines of reasoning developed with respect to the question of a client's contributory negligence. Halla argues the *Lincoln Grain* rule, based on *National Surety,* is more fair, that without it accountants are rendered immune from the consequences of their own negligence simply because those who employ them may have conducted their own businesses negligently. The *National Surety–Lincoln Grain* rule has been adopted in some other jurisdictions. *See Shapiro v. Glekel,* 380 F.Supp. 1053, 1058 (S.D.N.Y. 1974); *Cereal Byproducts Co. v. Hall,* 8 Ill.App.2d 331, 336, 132 N.E.2d 27, 29–30 (1956), *aff'd,* 15 Ill.2d 313, 155 N.E.2d 14 (1958); *Hall & Co. Inc., v. Steiner & Mondore,* 147 A.D.2d 225, 228, 543 N.Y.S.2d 190, 191–92 (1989); *Jewelcor Jewelers & Distrib., Inc. v. Corr,* 373 Pa.Super. 536, 551–52, 542 A.2d 72, 80 (1988); *Greenstein, Logan & Co. v. Burgess Marketing, Inc.,* 744 S.W.2d 170, 190 (Tex.Ct.App.1987), and has been considered by commentators to be the better rule on policy grounds. *See* Menzel, *The Defense of Contributory Negligence in Accountant's Malpractice Actions,* 13 Seton Hall L.Rev. 292, 310 (1983); Hawkins, *Professional Negligence Liability of Public Accountants,* 12 Vand.L.Rev. 797, 809–11 (1959).

Baumann–Furrie, on the other hand, argues that the contributory negligence exception adopted by the court of appeals is inappropriate in the context of our broad, expansive doctrine of comparative fault. They argue further that the exception was adopted initially to mitigate the harsh consequences of the common law rule of contributory negligence, an exception not necessary in a comparative fault state like Minnesota.[1] Finally, they argue that the

---

**1.** Some courts have recently refused to follow the *National Surety–Lincoln Grain* rule on the ground that *National Surety* and *Lincoln Grain* were decided in states which follow the principle of contributory negligence as a bar to recovery. *See Devco Premium Finance Co. v. North*

rule imposes a heavy evidentiary burden on the accountant: applying *Lincoln Grain* to a malpractice case would require that the defendant-accountant must prove not only that the plaintiff's negligence caused or contributed to the plaintiff's loss, but also that the plaintiff's negligence caused defendant's negligence.

Baumann–Furrie correctly points out that earlier interpretations of comparative fault by this court would seem to mandate that the same liberal construction apply to malpractice actions against accountants. We have on numerous occasions indicated our broad view of the principles of comparative fault. *E.g., Florenzano v. Olson,* 387 N.W.2d 168, 175–76 (Minn.1986), and *Seim v. Garavalia,* 306 N.W.2d 806, 812–13 (Minn.1981). Furthermore, we have applied principles of comparative fault to professional malpractice actions, *Martineau v. Nelson,* 311 Minn. 92, 101–02, 247 N.W.2d 409, 415 (1976) (medical malpractice); *Rosenthal v. Kolars,* 304 Minn. 378, 381, 231 N.W.2d 285, 287 (1975) (medical malpractice), as has the court of appeals, *Bowen v. Arnold,* 380 N.W.2d 531, 536 (Minn.App. 1986) (legal malpractice). We recognize, however, that professional malpractice actions pose peculiar problems and that the comparison of fault between a layperson and a professional should be approached with caution. Accountants, like other professionals, are held to a standard of care which requires that they "exercise the average ability and skill of those engaged in that profession." *Veron J. Rockler & Co.*

*v. Glickman, Isenberg, Lurie & Co.,* 273 N.W.2d 647, 650 (Minn.1978). Failure to exercise ordinary care in conducting accounting activities may expose an accountant to allegations of negligence. *Id.* By the same token, the persons who hire accountants, usually businesspersons, should also be required to conduct their business activities in a reasonable and prudent manner.

Because we have broadly construed the comparative fault act and applied it to other professional malpractice actions, we reverse the court of appeals and hold that the trial court did not err in applying the principles of comparative fault in this action by a client against an accountant for negligent failure to discover embezzlements in the client's business. The application of the broad definition of fault as set forth in the comparative fault statute can be particularly appropriate in such actions.[2] This is not to say that there would never be a case where a limiting exception might be necessary, for example, where the scope of employment is such that discovery of defalcations is clearly encompassed. This is not such a case. Furthermore, no case that comes to us without a record, without a factual underpinning, would be the proper case to delineate such an exception.[3]

## II.

We are next asked to determine whether the trial court erred in holding that its

---

*River Ins. Co.,* 450 So.2d 1216, 1220 (Fla.Dist.Ct. App.1984) (declined to follow *National Surety* approach because decided on principles of contributory negligence); *Capital Mortgage Corp. v. Coopers & Lybrand,* 142 Mich.App. 531, 537, 369 N.W.2d 922, 925 (1985) (declined to follow *National Surety* because comparative fault has less harsh consequences than contributory negligence).

**2.** For example, the unreasonable failure to follow the advice of an accountant to make improvements in the business so that future defalcations are not possible, is clearly a kind of fault embraced by the Comparative Fault Act. *See* Menzel, *Accountant's Malpractice,* 13 Seton Hall L.Rev. at 310–11.

**3.** For example, the court of appeals in this case held that contributory negligence is a defense only when a client's negligence contributes to

the accountant's failure to perform the contract. Without a record there is no way to determine the scope of the contract between Halla and Baumann–Furrie. Moreover, we do not know what generally accepted accounting practices are, or how they apply to the unknown "scope of the contract" between Halla and Baumann–Furrie. We note that the *Lincoln Grain* rule has generally only been applied to auditing contracts between a client and an accountant. *See, e.g., Shapiro v. Glekel,* 380 F.Supp. 1053, 1054–55 (1974); *Lincoln Grain, Inc. v. Coopers & Lybrand,* 216 Neb. 433, 442, 345 N.W.2d 300, 303–04 (1984); *Jewelcor Jewelers & Distrib., Inc. v. Corr,* 373 Pa.Super 536, 550–51, 542 A.2d 72, 80 (1988); *Greenstein, Logan & Co. v. Burgess Marketing,* 744 S.W.2d 170, 190 (Tex.Ct.App. 1987).

failure to instruct the jury on the effects of comparative fault was a fundamental error of law requiring a new trial. On the day the parties rested their cases, they met with the trial court in chambers to discuss proposed jury instructions. The trial court rejected Halla's proposed jury instruction attempting to limit Halla's contributory negligence and determined to instruct the jury on comparative fault. Both parties claimed that the trial court cautioned them not to comment on the effect of comparative fault in their closing arguments. During the instructions to the jury, the trial court instructed the jury on comparative fault, but omitted to tell the jury, as required by Minn.R.Civ.P. 49.01(2), the effect of its answers to the comparative fault question. Halla did not request the 49.-01(2) instruction, nor did either party object to the omitted instruction.

Halla subsequently filed a motion for judgment notwithstanding the verdict or a new trial, alleging that the "jury was not properly instructed and the argument of counsel was not permitted with respect to the affect [sic] of the jury's answers on the special verdict interrogatory on the apportionment of fault." In the order granting a new trial the trial court stated, "Plaintiff's motion for a new trial, on the ground that the Court erred in instructing the jury with respect to the Comparative Fault Statute in this action, is hereby granted." The new trial was to be on the issue of liability only and was granted under Minn.R.Civ.P. Rule 59.01(6).[4]

The court of appeals held that the trial court's granting of Halla's motion for a new trial based on its perceived fundamental error was not an abuse of discretion. *Halla Nursery*, 438 N.W.2d at 403–

04. Ordinarily, the decision to grant a new trial does lie within the sound discretion of the trial court and will not be disturbed absent a clear abuse of that discretion. *Lindstrom v. Yellow Taxi Co. of Minneapolis*, 298 Minn. 224, 230, 214 N.W.2d 672, 677 (1974) (quotation omitted). Review as of right for the granting of a new trial is available, however, if, and only if, the judge exercised no discretion and ruled that as a matter of law the complaining party was entitled to a new trial. *Haugen v. International Transport, Inc.*, 379 N.W.2d 529, 531 (Minn.1986). In its memorandum, the trial court specifically stated that the new trial was based on an error of law, not an exercise of discretion.[5] The proper standard of review, therefore, is de novo review.

Rule 51, Minnesota Rules of Civil Procedure, relates to assignment of error in jury instructions and reads in part:

> [n]o party may assign as error unintentional misstatements and verbal errors, or omissions in the [instructions], unless that party objects thereto before the jury retires to consider its verdict, stating specifically the matter to which the party objects and the ground of the objections. An error in the instructions with respect to fundamental law or controlling principle may be assigned in a motion for a new trial although it was not otherwise called to the attention of the court.

The trial court failed to instruct the jury, as required by Minn.R.Civ.P. 49.01(2), of the effect of the jury's answers to the comparative fault question. Halla knew, for both parties had been told in chambers, that the court was going to instruct the jury on comparative fault yet Halla did not

---

**4.** Minn.R.Civ.P. 59.01(6) provides: "A new trial may be granted * * * for any of the following causes: * * * errors of law occurring at the trial, and objected to at the time, or if an objection need not have been made pursuant to Rules 46 and 51, plainly assigned in the notice of motion * * *."

**5.** The court stated: "[t]his court has determined, quite reluctantly, to give a new trial to the plaintiff because it erred in failing to instruct the Jury on the effect of its answers to the percentage of negligence question. The new

trial was granted on that error alone, because of the wording of M.R.C.P. Rule 49.01, even though both counsel claim the Court in chambers cautioned *them* not to comment in their final argument on the effect of the jury's answers to the same question" (emphasis in original). This statement seems to indicate that the trial court's omission of the Rule 49.01(2) instruction was inadvertent even though the court may have deemed counsels' comments inappropriate.

request the 49.01(2) instruction nor call the court's attention to its omission. Instead, after the jury had returned its verdict, Halla sought a new trial, assigning the omitted instruction as fundamental error.

We addressed a similar assignment of error after plaintiff had failed to object to an omitted jury instruction in *American Reliable Ins. Co. v. Modern Homes, Inc.*, 311 Minn. 1, 247 N.W.2d 39 (1976). In *American Reliable,* we noted the strict limitations set forth in Rule 51 and deemed the omitted instruction to have been waived by experienced trial counsel's failure to call the court's attention to the omission. To explain "the rationale for imposing what is in effect a sanction upon counsel for failing to alert the court to its error," we cited the Author's Comments to Rule 51, 2 Hetland & Adamson, Minnesota Practice, p. 366:

> The party is as much at fault as the court for the failure to instruct particularly if the error was relatively apparent and the law relatively simple. If the error was difficult to notice and the failure to object was excusable, then the propriety of the objection in the new trial motion becomes more clearly a matter of fundamental law. Courts are reluctant to grant a new trial if they believe that the party is using the failure to object as a tactical device by waiting for the jury verdict before raising the error.

*American Reliable, id.* at 4, 247 N.W.2d at 41 (citation omitted). We noted further the distinction we had drawn in *Strobel v. Chicago, Rock Island & Pac. R.R.*, 255 Minn. 201, 96 N.W.2d 195 (1959), between an incorrect instruction, and an omitted instruction, whereby only an incorrect instruction is deemed a "fundamental error" for purposes of Rule 51. *Id.* In a later case we stated that a fundamental error of law under Rule 51 must "destroy the substantial correctness of the charge as a whole, cause a miscarriage of justice, or result in substantial prejudice on an issue 'vital in the litigation.'" *Clifford v. Peterson,* 276 Minn. 142, 145, 149 N.W.2d 75, 77 (1967).

Halla argues that in this case the omission of the jury instruction can be deemed an error of fundamental law or controlling principle even though it was not noted at trial, citing as authority our recent decision in *Becker v. Alloy Hardfacing & Eng'g Co.*, 401 N.W.2d 655 (Minn.1987). In *Becker,* we held that the failure to instruct the jury on the clear and convincing standard for punitive damages was a fundamental error of law despite defendant's failure to object. *Id.* at 659. *Becker* is not analogous. The trial court in *Becker* had instructed the jury to apply a preponderance of evidence standard, then by failing to qualify that instruction as to the clear and convincing burden necessary to award punitive damages, the court, in effect, affirmatively misled the jury. Because of the possibility that the jury had found for plaintiffs on all the critical facts by a preponderance of the evidence, this court concluded that the failure to provide the jury with proper instructions on the standard of proof was fundamental error which prejudiced defendants. Under the *Clifford* standard, the error not only resulted in prejudice, it destroyed the substantial correctness of the charge and caused a miscarriage of justice.

In *Lewis v. Equitable Life Ins. Co.*, 389 N.W.2d 876, 885 (Minn.1986), this court, while not expressly so holding, assumed that even if an affirmative misstatement of law in an instruction was fundamental error, the appellant could not demonstrate in the record that such error had changed the outcome of the case or otherwise prejudiced it. So with the case before us, even if Halla were not deemed to have waived the omitted instruction as ground for a new trial, even if the trial court's failure to instruct the jury as required by Rule 49.-01(2) is assumed to be fundamental error, the record does not show that the assumed error caused a miscarriage of justice or actually prejudiced the result. There is no basis for any speculation that the jury would have reversed its finding that Halla's negligence was, as the trial court also found it to be, "overwhelming," had it known Halla would take nothing by its verdict. The percentages of fault are not close and we are not presented with a full transcript from which to determine actual prejudice. Under the facts and circum-

stances of this case, we hold that the trial court erred in concluding that its failure to instruct the jury on the effects of comparative fault was a fundamental error of law requiring a new trial.

The judgment of the court of appeals is reversed.

Reversed.