**In re the Marriage of Randall Dean KERKHOFF, Petitioner, Respondent,**

v.

**Starla Eugenia KERKHOFF, Appellant.**

No. CX–86–1301.

Court of Appeals of Minnesota.

Feb. 10, 1987.

Review Denied March 25, 1987.

Ruth Ann McCaleb, Walters & McCaleb, Rochester, for respondent.

Ross Muir, Muir, Heuel & Carlson, P.A., Rochester, for appellant.

Considered and decided by FORSBERG, P.J., and SEDGWICK and HUSPENI, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

Appellant Starla Kerkhoff appeals from a judgment awarding respondent Randall Kerkhoff permanent custody of the couple's two children. Appellant also appeals from denial of her motions to re-open evidence and conduct a hearing on allegedly recanted testimony, and for amended findings or a new trial. We affirm.

## FACTS

On April 27, 1984, respondent filed an action for dissolution of marriage against appellant, and moved the Olmsted County Court, *ex parte*, for an order granting him temporary custody of their two minor children, A.K. and D.K. Pursuant to the order a hearing was held on May 10, 1984, to determine whether respondent should be awarded temporary custody of the children pending a final order in the dissolution proceedings. The court ordered a custody investigation to be conducted, and continued the matter until May 21, 1984. Kathy Berger of the Olmsted County Department of Social Services (OCDSS) worked with the parties coordinating the custody investigation and visitation arrangements. The parties then stipulated to an agreement providing for joint custody of the children.

While the children were in respondent's custody, appellant made repeated allegations of physical abuse against her by respondent to various Olmsted County agencies. Appellant also claimed that respondent had sexually abused their 8–year-old daughter, A.K. Appellant took A.K. to several women's shelters and crisis shelters where A.K. made similar accusations. This led to a series of interviews and examinations by several psychiatrists and counselors to determine the truth of the sexual abuse allegations.

Respondent subsequently moved the court for a temporary restraining order. The court ordered that pending the dissolution hearing, custody was to remain with respondent, and the parties were to be restrained from harassing each other. The court also ordered that any further allegations of sexual abuse were to be made through Kathy Berger.

At the dissolution hearing in January, 1986, appellant testified that she was the primary parent before the parties' separation, and introduced favorable custody evaluations from the OCDSS and Dr. Harlan Wickre. Appellant also testified that before the separation she worked nights as a waitress, and was employed as a singer in a traveling band. Respondent testified that while appellant was in the band she was gone from the homestead for up to two weeks at a time. He testified further that during this time, and at other times in the marriage, he was responsible for the typical parenting duties, such as bathing, feeding, and general care of the children. Appellant did not contribute financially to the children's support during the period in which they resided with respondent, although she was employed full-time.

Kathy Berger testified that she was concerned whether appellant would be able to meet the children's emotional needs. She stated that she had misgivings about whether appellant would be able to foster and encourage a healthy, meaningful relationship between the children and their father, particularly noting the unhealthy effect which the abuse allegations had on the children's development. Berger also testified that appellant made several untrue statements to her over the 22 months she was involved with overseeing the custody arrangements.

The children's teachers testified that appellant had never contacted them regarding the children's progress in school before the

commencement of the dissolution proceedings. A.K.'s teacher testified that appellant had falsely reported to the school that the children's vaccinations were current. Various witnesses testified that appellant's comments regarding her husband, often made in the presence of the children, were hostile and paranoid.

Psychiatrist Dr. Kathleen Logan, A.K.'s elementary school counselor, and OCDSS investigator Jim Durfee testified that they did not believe that A.K. was a victim of sexual abuse. They testified that A.K. had told them that her mother had forced her to make false allegations against her father. A.K. testified to this effect during an *in camera* examination. Dr. Logan and Jim Durfee testified that, in their opinion, the abuse allegations were unfounded and A.K. had not been sexually abused, but had been emotionally abused by her mother. Appellant's witness, Dr. Lucas, testified that he had not had enough time to determine the truth of the allegations.

Approximately three months after the hearing, appellant filed a letter to the court from A.K., in which A.K. allegedly recanted her *in camera* testimony regarding the abuse allegations against her father. The court denied appellant's motion to re-open the hearing and take new evidence on the allegedly recanted testimony and refused to accept appellant's affidavit and exhibits into evidence.

On June 3, 1986, the court made its findings of fact, conclusions of law and judgment and decree. The court found that neither parent was the exclusive primary caretaker of the children, and that appellant was unfit to be custodian of the children. The court awarded physical custody of both children to respondent. The court denied appellant's motion for amended findings or a new trial. This appeal followed. Appellant's counsel of record then withdrew, whereupon she substituted, as counsel to take this appeal, an attorney who had appeared as a witness on her behalf at trial.

## ISSUES

1. Did the court abuse its discretion in awarding respondent custody of the children?

a. Did the trial court err in determining that both parents were the primary caretakers of the children prior to the separation?

b. Assuming, *arguendo*, that appellant was the primary caretaker, did the trial court err in considering events occurring after the parties' separation in determining that appellant was unfit?

2. Did the trial court err in denying appellant's motions to re-open the hearing to take new evidence, or for amended findings or a new trial?

3. Should respondent be awarded attorney's fees for appellant's alleged violations of orders, rules of procedure and professional conduct?

## ANALYSIS

1. Appellant claims that the trial court abused its discretion in awarding respondent custody of the children. She claims that she was the primary caretaker prior to the parties' separation, and therefore the trial court should have awarded her custody of the children, absent a finding that she was unfit, citing *Pikula v. Pikula*, 374 N.W.2d 705 (Minn.1985). Appellant claims that the trial court disregarded evidence that she was the primary caretaker *before* the separation, and, in finding that neither party was the exclusive primary caretaker, concentrated on events occurring after she left the homestead, namely respondent's role as caretaker after the award of temporary custody. Appellant further claims that the *ex parte* order granting respondent temporary custody was invalid, and that but for this order, she would have remained the primary caretaker and, thus, would have been awarded custody.

Minn.Stat. § 518.131, subd. 3 (1984) provides in pertinent part:

A party may request and the court may make an Ex Parte restraining order

which may include any matter that may be included in a temporary order except:

(a) A restraining order may not exclude either party from the family home of the parties except upon a finding by the court of immediate danger of physical harm to the other party or the children of either party; and

(b) A restraining order may not deny visitation to either party or grant custody of the minor children to either party except upon a finding by the court of immediate danger of physical harm to the minor children of the parties.

*Id.* The ex parte order issued by the court did not restrain appellant from entering the family homestead. However, the order granted temporary custody to respondent and in so doing, the court failed to make the required finding of immediate danger of physical harm to the minor children. Nevertheless, appellant's argument fails because the trial court did not find that the father was the primary caretaker only during the period in which he had temporary custody of the children. The trial court specifically found that both parents were the primary caretakers *before* the separation, stating:

both parents performed the primary parent duties outlined in the *Pikula* decision at different times prior to the separation of the parties. For example, the Wife usually performed such duties when the children were very young and she was unemployed outside the home, the parents shared the duties while both of them worked, and the Husband alone was responsible for all such duties during the Wife's employment with the bank (sic) and travel "on the road."

■ Appellant points to favorable custody evaluations from the OCDSS and Dr. Wickre, claiming that there was substantial evidence for the trial court to award *her* custody of the children. Appellate review of custody determinations is not a determination as to whether the trial court properly granted custody to respondent, but is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Pikula,* 374 N.W.2d at 710. In this case, since there was sufficient evidence before the court to determine that neither parent functioned as the exclusive primary caretaker before the separation, the trial court's finding is not clearly erroneous. *Cf. Jorschumb v. Jorschumb,* 390 N.W.2d 806 (Minn.Ct.App.1986) (trial court did not err in determining that neither party functioned as primary parent at time proceedings were commenced).

■ Even assuming, arguendo, that appellant was the primary caretaker before the parties' separation, the trial court found that she was unfit to care for the children. The *Pikula* court held:

[w]hen both parents seek custody of a child too young to express a preference for a particular parent and one parent has been the primary caretaker, custody [should] be awarded to the primary parent absent a showing that that parent is unfit to be the custodian.

*Pikula,* 374 N.W.2d at 713. In finding appellant unfit, the trial court stated:

[t]he Wife at this time is unfit to be custodian of the minor children based upon her emotional abuse of the daughter, her untruthfulness in a variety of unrelated situations, her vengeful and paranoid attitude towards the Husband, her failure to provide any substantial financial support, her failure to deal appropriately with the children's medical or educational needs before and after the separation, and the lack of stability in various areas of her personal life.

■ Appellant claims that in its determination of unfitness, the trial court erred in considering events which occurred after the commencement of the dissolution proceedings. Appellant misconstrues *Pikula.* Although the *Pikula* court stated that the determination of the primary caretaker should be made as of the time the dissolution proceedings were commenced, the *Pikula* court did *not* state that the showing of unfitness should also be made at this time. Clearly, the court should consider all events up to the time of trial in making the

determination of parental fitness, since the sole reason for this determination is to make an award of custody which is in the best interests of the children. *See* Minn. Stat. § 518.17 (1984). Hence, the court did not err in considering events occurring after the parties' separation in determining the fitness of the mother.

■ 2. Appellant contends that the trial court erred in denying her motions to re-open the evidence and conduct a hearing on A.K.'s allegedly recanted testimony, and for amended findings or a new trial. The trial court was presented with a letter allegedly written by A.K. in which she claimed that her *in camera* testimony was perjured. In her letter, A.K. claimed that her mother had not forced her to make false accusations, but rather, that her father had pressured her to testify to that effect. Appellant thus moved the court to re-open the evidence and conduct a hearing on the allegedly recanted testimony to determine its effect on the court's award of custody. The trial court denied appellant's motion. Appellant claims that the trial court erred in excluding the evidence and refusing to hold the hearing, citing *Brooks Realty Inc. v. Aetna Insurance Co.*, 276 Minn. 245, 149 N.W.2d 494 (1967). Appellant argues that under *Brooks*, the trial court was compelled to conduct a hearing to determine the truth of the witness' testimony.

In *Brooks*, the trial court denied the defendant's motion to have a recanting witness testify under oath before the court and made its decision upon the basis of a statement taken outside the presence of the court. The Minnesota Supreme Court stated:

Much the same situation exists here as exists when a juror states after the verdict that something was wrong with the deliberation. In *Schwartz v. Minneapolis Suburban Bus Co.*, 258 Minn. 325, 104 N.W.2d 301 (1960) we stated what we thought was the better practice when that happens. If under those circumstances a juror is to be examined, it ought to be done before the court, where a record can be made. The same rule should apply to examination of a recanting witness. Thus the trial court, with whom is left a large discretion in determining whether a new trial should be granted, will have the benefit of observing the witness both at the time of trial and at the time of the recantation.

*Id.* at 251, 149 N.W.2d at 499. Under *Schwartz*, a hearing is not mandated in every case in which the validity of the deliberation process is questioned. The *Schwartz* court stated:

[r]ather than permit or encourage the promiscuous interrogation of jurors by the defeated litigant, we think that the better practice would be to bring the matter to the attention of the trial court, and, *if it appears that the facts justify so doing*, the trial court may then summon the juror before him and permit an examination in the presence of counsel for all interested parties and the trial judge under proper safeguards.

258 Minn. at 328, 104 N.W.2d at 303 (emphasis supplied). Thus the determination to conduct a *Schwartz* hearing is in the discretion of the trial court. *See, e.g., State v. Larson*, 281 N.W.2d 481 (Minn. 1979), *cert. denied*, 444 U.S. 973, 100 S.Ct. 467, 62 L.Ed.2d 388 (1979). Similarly, as indicated in *Brooks*, the decision to allow a recanting witness to testify under oath before the court is in the discretion of the trial court, and this court will not reverse the trial court's decision absent a clear abuse of discretion.

■ In this case the recanting witness was 8 years old. The trial court specifically found, based on testimony from professional counselors and doctors, that the child was being manipulated by her mother, and had, under her mother's influence, told several falsehoods. A.K. told doctors and counselors that her father had sexually abused her, only to later tearfully relate that her mother had told her to make the allegations. The child further testified *in camera* that pursuant to her mother's urging, she had lied about the abuse allegations. Significantly, it was not until after

A.K. spent the Easter holiday with her mother that she recanted this testimony. We hold that the trial court's determination not to allow the witness to testify before the court regarding the alleged recantation of her testimony was not a clear abuse of discretion.

■ Appellant argues that the trial court erred in denying her request for amended findings or a new trial. Recantation of testimony by a witness will generally not be sufficient grounds for a new trial. *Brooks*, 276 Minn. at 249, 149 N.W.2d at 497. If it appears that the trial court has fairly exercised its discretion in denying a motion for a new trial on grounds of newly discovered evidence, this court will not interfere with the trial court's determination. *State v. Smith*, 221 Minn. 359, 364, 22 N.W.2d 318, 321 (1946).

■ The traditional test to determine whether a new trial should be granted on the grounds of newly discovered evidence is whether the new evidence is so material that it would probably produce a different verdict if the new trial were granted. *See, e.g., Cut Price Super Markets v. Kingpin Foods, Inc.*, 256 Minn. 339, 357–58, 98 N.W.2d 257, 270 (1959). In cases where the evidence in question is not actually "new," but rather, recanted testimony, the Minnesota courts have used either the so-called *Larrison* rule, developed in *Larrison v. United States*, 24 F.2d 82, 87–88 (7th Cir.1928), or a variation of the *Larrison* rule set forth in *Whelan v. State*, 298 Minn. 545, 214 N.W.2d 344 (1974).

The *Larrison* rule provides that a new trial may be granted on the grounds of false or perjured testimony where:

(a) The court is reasonably well satisfied that the testimony given by a material witness is false;

(b) That without it the jury *might* have reached a different conclusion;

(c) That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.

*Larrison*, 24 F.2d at 87–88.

The two-prong test set out in *Whelan* provides that the trial court should grant the defendant a new trial if:

(a) the defendant has acted with due diligence in seeking a new trial; and

(b) the court is reasonably convinced that the witness has indeed recanted and that without this witness' perjured testimony at trial the jury might well have reached a different result.

298 Minn. at 545, 214 N.W.2d at 344.

Applying either of these tests to the present case, it is clear that at least one condition was not met, i.e., the trial court was not reasonably convinced that the witness was truly recanting her testimony.

In *State v. Hill*, 312 Minn. 514, 253 N.W.2d 378 (1977), the court stated:

Courts have traditionally looked with disfavor on motions for a new trial founded on alleged recantations unless there are extraordinary and unusual circumstances. * * * This rule is particularly relevant where possible changes in testimony have been occasioned by threats, pressure, and intimidation. * * * Where the "newly discovered" evidence is of doubtful character and the particular circumstances of a case do not lend credence to the appellant's claim, we will not hold that the trial court abused its discretion in denying the motion for a new trial.

*Id.* at 523, 253 N.W.2d at 384 (citations omitted).

The trial judge had the opportunity to observe the witnesses' demeanor and to judge their credibility. We have already stated that the trial court did not abuse its discretion in denying appellant's motion to conduct a hearing on A.K.'s alleged recantation. For the same reasons, we hold that under these circumstances, it was not error for the trial court to refuse to deny the motion for amended findings or a new trial.

■ 3. Respondent asks for an award of attorney's fees for alleged violations of Rules of Procedure and Professional Re-

sponsibility, pursuant to Minn.Stat. § 549.-21 (1984). Respondent claims that the trial court had ruled that attorney Muir could not act as appellant's attorney. The trial court, however, did not express an opinion as to whether attorney Muir could take this appeal. Moreover, the Board of Professional Responsibility is the proper forum to determine whether Muir has violated any rules of professional conduct.

Respondent further argues that appellant's brief refers to matters that are not properly in evidence before this court. Appellant had to refer to these items, however, for this court to determine whether the trial court erred in excluding them.

Finally, respondent argues that appellant and her attorney violated a trial court order in videotaping a "confession" of A.K. recanting her testimony. The trial court had earlier ruled that any further questioning of A.K. be through Kathy Berger. We agree that the conduct of appellant and her attorney in disregarding the court order and subjecting the child to further interrogation is questionable. This issue was raised at the trial court, however, and the court did not find appellant or her attorney in contempt.

## DECISION

The trial court did not abuse its discretion in awarding respondent custody of the two minor children. The court properly denied appellant's motions to re-open testimony and conduct a hearing on the minor daughter's allegedly recanted testimony, and on appellant's motions for amended findings or a new trial. Respondent is not entitled to an award of attorney's fees.

Affirmed.