**In re the Marriage of Daniel Lee RANDALL, Petitioner, Respondent,**

**v.**

**Dianne Jorde STEWARD, f/k/a Dianne Lynne Jorde, and Dianne Lynn Randall, Appellant.**

**No. C2–88–65.**

Court of Appeals of Minnesota.

July 5, 1988.

Lawrence D. Downing, Rochester, for appellant.

Charles James Suk, Rochester, for respondent.

Considered and decided by CRIPPEN, P.J., SCHUMACHER and MULALLY*, JJ., without oral argument.

## OPINION

CRIPPEN, Judge.

Diane Jorde Stewart appeals the trial court's order on custody of her two children. After stating that neither parent had a greater caretaking role, the court concluded custody with the father would further the children's best interests, finding determinative the children's interest in a continued relationship with both parents.

## FACTS

The parties, Daniel Lee Randall and Dianne Jorde Stewart were married on March 17, 1973. They had two daughters during the marriage: one born August 14, 1978, and the other born February 11, 1981.

Respondent commenced divorce proceedings on December 17, 1983, and the marriage was dissolved on April 3, 1984. The order incorporated a stipulation between the parties which gave the parents joint legal custody. The agreement provided that the children would reside with each parent for one month and then after July 15, 1984, the parties would alternate custody every three or six months for a period of one year. After one year, a final decision of physical custody was to be agreed upon by the parties or made by further order of the court.

On March 28, 1986, the father requested a custody investigation, to try to clear up allegations of child abuse made by the mother. The final trial was held on August 10, 1987.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

#### a. Parental care

Each parent claimed status as primary caretaker of the children. Appellant emphasized that she took leave from work after the birth of each daughter; that she adjusted her work schedule so she could be home during the day; and that she breast-fed the children. As for specific tasks around the house, she testified she did most of the cooking and meal preparation, while he shopped for groceries and did errands; she did most of the bathing, grooming and dressing of the girls, and he did "some;" she made or purchased clothes for the girls; she took the children to their doctor appointments and to the hospital when needed, but he cared for the other child at those times and also took the girls to the emergency room on some occasions. Appellant testified she arranged day care; whichever parent was home attended to the children, but she did so on weekends; they shared discipline responsibilities; he did heavy work around the house and yard; and she did certain educating and teaching of skills to the children. Further, she indicated concern about sexual abuse of the girls and that the father was less perceptive to their individual personalities.

Respondent testified that he enjoyed taking care of the children, "participated a lot," and did some cooking. He stated that he did the more heavy work, vaccuuming, cleaned the basement, the garage, and the cars, and that the mother "would take care of the more feminine household chores." He thought they shared the child care about "50–50."

The custody study did not address the bonding between the parents and children in any detail and did not recommend custody in either parent. A friend of the father's stated that when the girls are with the father and his new wife "everyone seems happy, content, relaxed in one another's company."

The trial court concluded that both parents participated fully in child-rearing. The court based its conclusion primarily on the fact that the parties had complimentary work schedules prior to the separation and that after the separation the father worked days and the mother nights.

#### b. Best interest factors (a)–(g)

The trial court went on the consider the best interests of the children based on the statutory factors in Minn.Stat. § 518.17, subd. 1 (Supp.1987).[1] The court found both parents desire custody, and that both children's interaction with family and adjustment to home, school and community do not weigh in favor of either parent. The court disregarded factor (j) because it could not find there was an abuser even though there has been a great deal of emotional abuse between the parents. The mental and physical health of the parties appears to be healthy and normal. The court found factors (e), (f) and (i) not of great significance in this case. As to factor (b), the court stated that one of the children expressed a preference for spending more time with her father, and that both children have talked about anger being displayed between the mother and her new husband. However, the court concluded the children were too young (ages 6½ and 9, respectively, at the time of trial) to give much weight to their preferences.

---

1. The best interests of the child include, among other things:

    (a) the wishes of the child's parent or parents as to custody;

    (b) the reasonable preference of the child, if the court deems the child to be of sufficient age to express preference;

    (c) the interaction and interrelationship of the child with a parent or parents, siblings, and any other person who may significantly affect the child's best interests;

    (d) the child's adjustment to home, school, and community;

    (e) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

    (f) the permanence, as a family unit, of the existing or proposed custodial home;

    (g) the mental and physical health of all individuals involved;

    \*   \*   \*   \*   \*   \*

    (i) the child's cultural background;

    (j) the effect on the child of the actions of an abuser, if related to domestic abuse \* \* \* that has occurred between the parents.

    Minn.Stat. § 518.17, subd. 1 (1986 & Supp. 1987).

c. Factor (h): capacity and disposition to give custodial care.

Not having reached any conclusion from the other factors, the court stated "[t]hat leaves us with the capacity and disposition of the parties to give the children love, affection and guidance" as the dispositive factor.[2] The parties presented extensive evidence regarding the appellant's repeated suggestions of sexual abuse by respondent, the veracity of the parties, and the significance of the evidence of abuse.

After the mother expressed concern with the older child's behavior problems, in December 1983 the child was examined by two doctors. Both doctors noted behavior indicating a possible sexual abuse problem, but one concluded that he doubted clinically that any abuse had occurred and that the child's behavior was probably attributable to her anxiety stemming from the parents' antagonism to each other. In May 1984, the Olmsted County investigation of possible sexual abuse of the girls was closed as "unsubstantiated."

The older daughter began therapy with a child therapist, Katie Beckmann, who observed the child engaged in "sexually aggressive" behavior with dolls. She was also examined by a physician, Dr. Broughton, who reported his finding of suspected sexual abuse to the Olmsted County Department of Social Services. An incident with another child at the babysitter's prompted the parents to change babysitters.

After the investigation was closed as unsubstantiated, the mother continued to report claimed incidents of sexual abuse of the children. The new babysitter also reported to the child's therapist about her behavior that could be interpreted as sexual. An examination at the hospital following these reports was negative.

Appellant reported other incidents to Social Services. In October 1985 the county attorney advised her there was not enough evidence to warrant reopening the case. At the request of the mother, the children were interviewed by a child abuse specialist, who concluded the girls showed symptoms consistent with sexual abuse but she could not substantiate any abuse.

The trial court found the abuse accusations untrue. The court found significant the fact that the mother took the children to the child abuse specialist as late as November 1985, after investigations into sexual abuse were twice closed due to insufficient evidence.

The court discussed the recommendation of various observers. Ron McGuire, a social worker, reported that custody should be shared and that a slight preference should be given to the mother having custody for the nine month school year, because the children seem more hyperactive after visiting their father and the mother does an excellent job as a parent.

McGuire also made findings that the worker who interviewed the children did not believe any sexual abuse had occurred; that the children are confused and angry at both parents because of the extended conflict between the mother and father. He found both parents appear to be mentally healthy but "have lost perspective on what's best for the children." The court concluded McGuire's recommendation in favor of the mother lacked sufficient foundation because it was based on the babysitter's questionable statements.

In addition to the accusations of abuse, the evidence showed "no shortage of animosity and hostility" between the parents. The court recited and found very correct at the date of trial the observation of Katie Beckmann, the children's therapist, that both the mother and father "would go to great lengths" to prove "that they were the better parent and that they should have the children." The court also noted that both the mother and father presented themselves better on the witness stand than in the conduct of their lives.

Beckmann testified that her greatest concern was which of the two parents

2. (h) the capacity and disposition of the parties to give the child love, affection, and guidance, and to continue educating and raising the child in the child's culture and religion or creed, if any * * *.
Minn.Stat. § 518.17, subd. 1 (1986).

"would be supportive of the relationship that the girls would have with the other parent." Based on contacts with the girls for three and a half years, it was her opinion that the father would be supportive but the mother would not be. The court noted that Beckmann spent the most time with the children and was "the one person in this case who is truly looking out for the best interests" of the children. The court specifically found that appellant throughout the case "attempted by manipulation and otherwise to get professionals to agree with her that the father sexually abused the children." When appellant was unable to do so she would dismiss them; she also attempted to change the older child's therapist in part because she believed Ms. Beckmann "was siding with the [f]ather." The court found the mother is "very vindictive" towards the father and that she conveys her hate for the father to the children. Based on these findings the court found the father to be "more likely to encourage and allow visitation with the mother."

The court found that "the mother would in all likelihood continue to exclude the father regardless of any joint legal custody provisions" while the father would likely "keep the mother informed of the major decisions and the condition of the children while they are in his custody." In conclusion, the court stated:

> [T]he father has the greater capacity and disposition * * * to give the children love and affection and guidance, which includes fostering a proper respect for the opposite parent.

In support of this opinion the court noted that the children have said the mother made derogatory remarks about the father in front of them, but that the father has not done so about the mother.

The court concluded that the children should spend a greater portion of their time with their father, but that the mother should have reasonable and liberal visitation.

The court also awarded the father $2,277.87 in costs.

## ISSUES

1. Was there sufficient evidence of record to support the trial court finding that neither parent had a greater caretaker role than the other?

2. Did the trial court abuse its discretion by making findings unsupported by the evidence or by improperly applying the law in reaching its ultimate opinion that placement of legal and physical custody with the father is in the children's best interests?

3. Did the trial court err in requiring appellant to pay $2,277.87 in costs?

## ANALYSIS

### I.

### Primary parenting

There was considerable evidence showing that each parent spent a large percentage of their working day with the children. On this record, the court's conclusion that neither had a greater caretaking role than the other was not error. *See Kennedy v. Kennedy*, 403 N.W.2d 892, 897–98 (Minn.Ct.App.1987) (neither parent primary because they shared caretaking in an equal way); *Kerkhoff v. Kerkhoff*, 400 N.W.2d 752, 756 (Minn.Ct.App.1987), *pet. for review denied* (Minn. Apr. 23, 1987) ("neither parent functioned as the exclusive primary caretaker before the separation"); *Regenscheid v. Regenscheid*, 395 N.W.2d 375, 379 (Minn.Ct.App.1986), *pet. for review denied* (Minn. Dec. 23, 1986) (where mother was traditional homemaker but father took strong role in other kinds of care of the child, and had strong emotional bond with the children, the trial court was justified in finding neither parent primary). *See also Jorschumb v. Jorschumb*, 390 N.W.2d 806, 811–12 (Minn.Ct.App.1986), *pet. for review denied* (Minn. Aug. 27, 1986); *Hemingsen v. Hemingsen*, 393 N.W.2d 414, 416 (Minn.Ct.App.1986), *pet. for review denied* (Minn. Nov. 17, 1986); *Pekarek v. Pekarek*, 384 N.W.2d 493, 497 (Minn.Ct.App.1986); *Ryan v. Ryan*, 393 N.W.2d 511, 514–15 (Minn.Ct.App.1986).

As for the bonding between each parent and the children, both parties evidently

damaged that bond by quarreling. The court specifically noted that each party had problems with credibility and that both lost sight of the children's best interests. Because these are first-hand observations, we must defer to the trial court's assessment of facts.

## II.

### Best interests

■ The court clearly considered factors (a)–(g) and (i)–(j) relating to best interests of the children. *See* Minn.Stat. § 518.17, subd. 1. The court's findings that none of these factors tipped the balance in favor of either parent was supported by the evidence.

The trial court made evident that the determinative factor in the case was factor (h), the ability of the parents to support one another. The court found compelling Katie Beckmann's recommendation that the father have custody based on her testimony that "children do best when their parents are supportive of the other parent with whom they're not living at that time." Thus, the court felt the best interests of the children depended on the parties supporting each other as parents.

Assessment of testimony by the parents is a matter of credibility distinctly within the province of the trial court. The trial court's finding as to the capacity of the parties to support one another as parents is rational if not compelling, is supported by the evidence, and is a wholly appropriate exercise of its discretion.[3]

## III.

### Costs

The court may order payment of reasonable costs to either the petitioner or the respondent in a dissolution proceeding, "after considering the financial resources of both parties." Minn.Stat. § 518.14 (1986). The award of fees and costs is

discretionary and is not predicated on the recipient being the prevailing party. On appeal, the award will not be disturbed absent a clear abuse of discretion. *O'Neil v. O'Neil*, 297 Minn. 516, 516, 210 N.W.2d 237, 238 (1973) (citations omitted).

Appellant objects to the award on the grounds that she as well as the respondent was "put to terrible expense;" that there was no testimony as to her assets or income; and that the action was not frivolous or without merit. She contends the decision was "compensatory" to the father and punitive to the mother.

■ The merits of the case are irrelevant to the award of costs under the statute. However "[f]ee awards may be based on the impact a party's behavior had on the costs of litigation." *Holder v. Holder*, 403 N.W.2d 269, 271 (Minn.Ct.App.1987).

■ The court should consider the parties' financial resources in an award; the order does not reflect that this was done. The trial court nevertheless had access to the file and the record indicates that both parties enjoy healthy financial circumstances and high earning ability. Appellant did not contend to the trial court or to this court that the financial equities were inconsistent with the award made. We have no basis to find an abuse of discretion by the trial court.

### DECISION

The trial court did not abuse its discretion in finding that neither parent had a greater caretaker role and in concluding that the best interests of the children require the father to have custody because he will be most supportive of their relationship with the non-custodial parent.

Affirmed.

---

**3.** The trial court's analysis of the case is in accord with Minnesota's statutory standards, and is corroborated by scientific studies on the welfare of children and understandings of ancient origin: "Then the woman whose son was alive said to the king, because her heart yearned for her son, 'Oh, my lord, give [the other claimant] the living child, and by no means slay it.'" King Solomon adjudged that this claimant was the child's true mother; thus, he was praised for his wisdom and his rendering of justice. I Kings 3:16–28.