Janet DOSTAL, et al., Appellants,

v.

David CURRAN, M.D., et al., Respondents,

Fairview Health Services, d/b/a Fairview Ridges Hospital, Respondent.

No. A03–1483.

Court of Appeals of Minnesota.

May 18, 2004.

David B. Ketroser, Attorney at Law, Minnetonka, MN, for appellants.

David C. Hutchinson, Jeremy J. Sundheim, Carolin J. Nearing, Geraghty, O'Loughlin & Kenney, P.A., St. Paul, MN, for respondents David Curran, M.D., et al.

Barry G. Vermeer, Kathleen M. Loucks, Gislason & Hunter, LLP, Minnetonka, MN, for respondent Fairview Health Services.

Considered and decided by HARTEN, Presiding Judge, RANDALL, Judge, and KLAPHAKE, Judge.

## OPINION

HARTEN, Judge.

Appellants moved for judgment notwithstanding the verdict (JNOV) or for a new trial on the ground that expert affidavits they obtained after trial contradicted portions of the unrecanted trial testimony of one of respondents' expert witnesses.[1] The motion was denied. They challenge the denial of the motion for a new trial, which we affirm.

## FACTS

Appellant Janet Dostal, a patient of respondent Southdale Obstetric & Gynecology Consultants (Southdale), delivered a healthy baby boy at the hospital of respondent Fairview Health Services (Fairview) about 9:30 a.m. on 12 February 2000. About 2:00 a.m. on 13 February 2000, appellant experienced symptoms later deter-

---

1. Appellants also challenge the denial of their motion for additur, and respondents, by notice of review, challenge the jury's determinations that they were negligent. Because we affirm the denial of appellants' motion for a new trial, these issues are moot, and we do not address them.

mined to be streptococcal meningitis. On 11 February 2000, the positive result of appellant's test for Group B streptococcus had been faxed by Southdale to Fairview and been placed in a pile of documents to be filed. Because the positive result was not in appellant's file, and no other factor indicated that the baby was at risk, penicillin had not been administered during appellant's labor.

Appellant and her husband Kevin Dostal brought this action against Southdale and Fairview, contending that their negligence had caused her to contract meningitis. At trial, one of respondents' expert witnesses, a board-certified specialist in internal medicine and sub-specialist in infectious diseases, testified extensively.[2] His testimony included statements that strep bacteria may have been colonized on Janet Dostal's skin and that one percent of blood-borne penicillin reaches the cerebral spinal ·fluid (CSF). After trial, the Dostals obtained an affidavit from a microbiologist who said that strep bacteria do not colonize on skin and an affidavit from a pharmacologist who said that five to ten percent of blood-borne penicillin reaches the CSF.

On the basis of these affidavits, appellants unsuccessfully moved for a new trial. They now challenge the denial of that motion.

### ISSUE

Are posttrial expert affidavits contradicting the unrecanted testimony of an expert who testified at trial "[m]aterial evidence newly discovered" within the meaning of Minn. R. Civ. P. 59.01(d)?

**2.** A review of the transcript indicates that respondents' expert was cross-examined intensely. Appellants' attorney made repeated attempts to impeach him, generally by using statements in medical articles and textbooks

### ANALYSIS

"A new trial may be granted . . . for . . . [m]aterial evidence newly discovered, which with reasonable diligence could not have been found and produced at the trial." Minn. R. Civ. P. 59.01(d). The decision to grant a new trial generally lies within the sound discretion of the district court and will not be disturbed absent a clear abuse of that discretion. *Halla Nursery, Inc. v. Baumann–Furrie & Co.*, 454 N.W.2d 905, 910 (Minn.1990). But when the district court exercises no discretion and decides a motion for a new trial because of an error of law, a de novo standard of review applies. *Id.*

Appellants claim they are entitled to a new trial because the posttrial affidavits are "material evidence" that could not have been found and produced at the trial. But the affidavits, neither of which was provided by a medical doctor, do no more than contradict insignificant portions of respondents' expert's testimony. A new trial will not generally be granted on the basis of evidence that is merely contradictory, impeaching, or cumulative. *Disch v. Helary, Inc.*, 382 N.W.2d 916, 918 (Minn.App. 1986), *review denied* (Minn. 24 Apr. 1986).

The affidavits do not meet the standard required for granting a new trial. First, the disputed evidence is not material. On appeal from the denial of a motion for a new trial, the jury's "verdict must stand unless it is manifestly and palpably contrary to the evidence, viewed in a light most favorable to the verdict." *ZumBerge v. N. States Power Co.*, 481 N.W.2d 103, 110 (Minn.App.1992), *review denied* (Minn. 29 Apr. 1992). The probability that minute portions of respondents' expert's ex-

out of context. In testimony on medical issues of this complexity, the context of the questions and answers is critical. The attempts to impeach failed—the jury's verdict indicates that the expert witness was credible.

tensive testimony were responsible for the jury's verdict is remote.

Furthermore, most of that expert's testimony was corroborated by the testimony of another expert witness. Even without the disputed testimony, ample evidence supports the jury's verdict; it is not "manifestly and palpably contrary to the evidence." *Id.*

Appellants' claim that the affidavits contradicting the expert's testimony could not have been found and produced at the trial also fails. Appellants argue that, because respondents had not disclosed that their expert would testify as to the existence of strep bacteria on the skin of the lower back and as to what percentage of blood-borne penicillin enters the CSF, appellants could not oppose this testimony. But appellants admit that, during trial, their attorney recognized portions of the expert's testimony as going beyond the disclosure. He did not object to this testimony as previously undisclosed, or ask that it be stricken, or offer evidence to rebut it, or ask for a continuance to prepare to deal with it.[3] The posttrial affidavits do not meet the standard of Minn. R. Civ. P. 59.01(d); appellants, "with reasonable diligence[,]" could have found other evidence to produce at trial. The district court did not abuse its discretion in denying a new trial based on newly discovered material evidence.

■■ Appellants argue that the district court erred as a matter of law in not using the test set forth in *Larrison v. United States*, 24 F.2d 82 (7th Cir.1928) for granting a new trial based on false or recanted testimony because the posttrial affidavits purport to show that portions of respondent's expert's testimony were false. Minnesota adopted *Larrison* in *State v. Caldwell*, 322 N.W.2d 574 (Minn.1982).

[A] new trial may be granted on the grounds of false or perjured testimony where:

(a) The court is reasonably well satisfied that the testimony given by a material witness is false.

(b) That without it the jury *might* have reached a different conclusion.

(c) The party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.

*Id.* at 584–85. The overwhelming majority of cases citing *Larrison* involve criminal convictions later found to have been based on false or recanted testimony.[4]

Even assuming arguendo that the *Larrison* test was appropriate, appellants are not entitled to a new trial. The first prong of the test is not met because the district court was not "reasonably well satisfied" that the testimony of respondents' expert was false. In fact, appellants acknowledge that "the [district] Court failed to overtly acknowledge the claim of false testimony by [the expert]." The expert not only failed to recant his testimony; he stated explicitly in his own posttrial affidavit that he had reviewed the posttrial affidavits obtained by appellants and that "[t]he in-

---

3. It is arguable that this failure to challenge the testimony during trial operated as a waiver of the right to challenge it in a new trial motion. "[W]here there is no objection at the time the evidence is offered, no claim of surprise at trial and no request for a continuance, trial courts are well within their discretion to deny a motion for a new trial." *Gunderson v. Olson*, 399 N.W.2d 166, 168 (Minn. App.1987), *review denied* (Minn. 18 Mar. 1987).

4. Of the 22 published Minnesota cases citing Larrison, only one, *Kerkhoff v. Kerkhoff*, 400 N.W.2d 752, 758 (Minn.App.1987), *review denied* (Minn. 23 Apr. 1987), was a civil case, and that case involved recanted testimony.

formation in those Affidavits has not caused me to change the opinions I expressed at the trial of this case." The affidavits form the sole basis of appellants' claim that the expert delivered false testimony.

The second *Larrison* criterion is not satisfied because the testimony of another expert supported the disputed expert's testimony and provided an ample basis for the jury to decide that respondents' negligence did not cause appellant Janet Dostal's injuries.

Finally, appellants do not meet the third criterion of the *Larrison* test, i.e., that they were surprised by the testimony or did not know of its falsity until after trial, because almost every particular of the testimony was disclosed before trial. Specifically, it was disclosed that the expert would testify that:

> [Janet Dostal's] development of meningeal symptoms in the absence of a high fever and chills is consistent with the Group B strep organisms entering her cerebral spinal fluid at the time of administration of the epidural anesthetic on the morning of February 12, rather than first entering her bloodstream and causing bacteremia prior to meningeal symptoms.

A review of the record shows that this was the thrust of the expert's testimony on both direct and cross-examination. We conclude that appellants are not entitled to a new trial.

## DECISION

The posttrial expert affidavits contradicting the unrecanted testimony of respondents' expert were not "[m]aterial evidence newly discovered" within the meaning of Minn. R. Civ. P. 59.01(d), and they did not lead to the district court being "reasonably well satisfied that the testimony given by a material witness was false" under the *Larrison* test. Neither an analysis under Minn. R. Civ. P. 59.01 nor an analysis under *Larrison* indicates that appellants are entitled to a new trial.

**Affirmed.**

RANDALL, Judge (concurring specially).

I concur in the majority's conclusion that posttrial affidavits contradicting *unrecanted testimony* of an expert were not a basis, on these facts, for a new trial. But I would go further and state that "*Larrison* testimony" has no place in a civil trial where there is simply "a battle of experts." I find no *Larrison* issue here to even have to consider.

As the majority indicates, *Larrison v. United States*, 24 F.2d 82 (7th Cir.1928) is an old federal criminal case discussing the standard to grant a defendant a new trial when you have recanted testimony. As the majority points out, of the 22 Minnesota cases citing *Larrison*, every single one was criminal except one civil case, and that civil case involved *recanted testimony*.

At oral argument, appellant's counsel had to concede that he did not know of one case in this country where, in a civil case not involving posttrial recanted testimony but merely experts with opposing points of view at trial, *Larrison* was found to be controlling law for a civil case. In the thousands and thousands of civil cases in this state and in this country yearly, involving claims of medical malpractice, products liability, accident reconstruction, etc., you have experts with opposing views routinely. Sometimes the experts are so opposed "in their expert opinion" that a common-sense lay juror is going to say to themselves, "Boy, somebody has to be lying because they both can't be right!" There has *never* been a basis for equating opposing experts with opposing opinions as

the legal equivalent of perjured and/or posttrial recanted testimony under oath. To even think about doing so would throw virtually every single civil case in this country, where experts are used, state and federal, into a continual series of posttrial *Larrison* motions. You can always find after a trial another expert to sign an affidavit that purportedly contradicts something that another expert said at trial.

Put simply, the resolution of conflicting expert opinions at trial is for the jury. That is the way it has always been. *Romanik v. Toro Co.*, 277 N.W.2d 515, 518 (Minn.1979) (holding that conflicts in expert testimony are to be resolved by the jury); *State v. Ostlund*, 416 N.W.2d 755, 760–61 (Minn.App.1987) (stating that where doctor opinions conflict, the trier of fact is to determine the credibility of the witness and the weight to be given their testimony).

I would find, as a matter of law, that there never was a *Larrison* issue in this case because it was a civil case and did not have any posttrial recanted testimony.