*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2074**

John Green,
Respondent,

vs.

Greg Kellen,
Appellant.

**Filed July 27, 2015
Affirmed
Hooten, Judge**

Big Stone County District Court
File No. 06-CV-12-233

Gregory P. Grajczyk, Grajczyk Law, Milbank, South Dakota (for respondent)

Ronald R. Frauenshuh, Jr., Ortonville, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Schellhas, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

In this appeal after remand, appellant challenges the district court's special-damages award on respondent's defamation claim, asserting that the district court abused its discretion by (1) relying on the testimony of respondent's expert to special damages, and (2) not granting a new trial or making amended findings of fact. We affirm.

## FACTS

The underlying facts of this case are presented more fully in this court's decision on the first appeal. *Green v. Kellen*, No. A13-1554, 2014 WL 2178783 (Minn. App. May 27, 2014). The parties, who both worked as crop farmers in a rural Minnesota community, had been friends, but had a "falling out." Respondent John Green sued appellant Greg Kellen for conversion, trespass, and defamation, claiming primarily that Kellen had spread around the rural community that Green was a thief. Prior to the Kellen's dissemination of this accusation, Green had rented farmland from J.K. for three years, and Green and J.K. planned to enter into another three-year lease. But, after J.K. heard about Kellen's accusation against Green, he refused to renew the lease. J.K. testified that the defamation was a substantial factor in his decision not to renew the lease.

In his answer, Kellen conceded causation and liability as to the defamation claim, but disputed the amount of damages. A bench trial was held on the issue of damages. The district court awarded Green $2,000 in general damages on the defamation claim, but denied special damages because it concluded that the evidence of special damages was equivocal. In the first appeal, this court upheld the district court's award of general damages, but remanded for a determination of the amount of special damages because we concluded that the evidence of special damages was not equivocal. *Id.* at *4. On remand, the district court awarded Green $84,840 in special damages for three years of lost profits due to his not being able to rent and farm J.K.'s land. The district court denied Kellen's posttrial motion for a new trial or amended findings. This second appeal followed.

2

# DECISION

## I.

Kellen argues that the district court improperly relied on the testimony of Green's expert, Bryan Jalbert, and improperly admitted Jalbert's calculations as to Green's lost profits. Expert testimony may be admissible "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Minn. R. Evid. 702. Non-novel expert testimony is admissible under rule 702 only if the proponent shows that the testimony passes a three-part test: "(1) [t]he witness must qualify as an expert; (2) the expert's opinion must have foundational reliability; [and] (3) the expert testimony must be helpful to the trier of fact." *Doe v. Archdiocese of St. Paul*, 817 N.W.2d 150, 164 (Minn. 2012).

We review a district court's ruling on the admissibility of expert testimony for an abuse of discretion. *Poppler v. Wright Hennepin Coop. Elec. Ass'n*, 834 N.W.2d 527, 537 (Minn. App. 2013), *aff'd*, 845 N.W.2d 168 (Minn. 2014). "Even if a district court abuses its discretion in its rulings on the admissibility of expert testimony, however, we will reverse a denial of a new trial only if the rulings resulted in prejudicial error." *Id.*

### A. Jalbert was qualified as an expert.

Kellen argues that Jalbert was unqualified to give expert testimony as to Green's loss of farm income. A witness may qualify as an expert "by knowledge, skill, experience, training, or education." Minn. R. Evid. 702. Jalbert testified that he has "run a farm management business" for 36 years. He also runs a cattle and hay farm near Green's farm. As part of his farm management business, Jalbert performed accounting

work for his clients. At the time of trial, in June 2013, Jalbert had done Green's accounting for nearly three years and had prepared Green's tax returns for 2011 and 2012. Jalbert did not claim to have special training or education in accounting. However, based on this record, the district court did not err in concluding that Jalbert was qualified as an expert based on his knowledge, skill, and experience in accounting and farming, such that he could offer an opinion as to Green's future loss of farm income.

**B.      Jalbert's expert opinion as to loss of future profits had foundational reliability.**

Kellen argues that the district court erred by overruling his lack-of-foundation objection to the district court's receipt into evidence of Jalbert's calculations of Green's loss of potential farm income. He also argues that the district court erred by adopting Jalbert's calculations in making its special-damages award. When considering whether expert testimony has foundational reliability, the district court must undertake three steps:

> First, the district court must analyze the proffered testimony in light of the purpose for which it is being offered. Second, the [district] court must consider the underlying reliability, consistency, and accuracy of the subject about which the expert is testifying. Finally, . . . the proponent of evidence about a given subject must show that it is reliable in that particular case.

*Doe*, 817 N.W.2d at 167–68 (citations omitted).

Jalbert calculated the "Annual Operating Margin Profit" for the portion of J.K.'s land that Green would have farmed but for Kellen's defamation. He based his calculations on his knowledge of Green's farming practices. In 2011 and 2012, Green farmed a total of nearly 2,000 acres of land, including the 600 acres he rented from J.K.

4

J.K. testified that, until he heard about Kellen's accusations about Green, he had planned to increase the amount of acres he rented to Green to 800 acres for a three-year period. Therefore, to calculate Green's loss of farm income from the J.K. land, Jalbert used the 800-acre figure.

To determine the gross revenue per acre per month, Jalbert took several things into account. The actual production history yield for this land was 123 bushels per acre. A federal insurance crop program insured 80% of these bushels, which means 98.4 bushels were guaranteed and 24.6 bushels were non-guaranteed. Jalbert used $5.65 as the price per bushel for guaranteed bushels, based on the futures market. For non-guaranteed bushels, he used $5.50, based on the figure from the local Farm Service Agency office. Green's gross revenue per acre would thus be $555.96 guaranteed and $135.30 non-guaranteed, for a total of $691.26. Jalbert added $5.35 per acre to account for a direct government payment, amounting to a total gross revenue per acre per month of $696.61.

To determine the expenses per acre per month, Jalbert first calculated the direct production costs (variable costs), based on information provided to him by Green. These variable costs consisted of seed, fertilizer, chemical, fertilizer spreading, fuel and oil, repairs, and crop insurance, totaling $354.25 per acre. Jalbert did not include in this figure Green's general operating expenses (fixed costs), such as equipment, buildings, and utilities. As to the rent amount, Jalbert used a figure of $300 per acre per month because that was the going rate in the area. This amounted to total expenses per acre per month of $654.25.

5

This resulted in a net profit of $42.36 per acre per month, and an annual profit for the entire 800 acres of $33,888. Thus, under Jalbert's calculations, for the first year Green did not rent and farm J.K.'s land, he earned $33,888 "less than if he had the land." Jalbert did not testify as to years two and three, but if this figure were adopted for all three years, the total lost profits would be $101,664.

On remand, the district court accepted Jalbert's expert opinion and adopted most of his calculations, finding that Green had been "damaged by the loss of the ability to farm 800 acres of farmland for 3 years" and determining Green's lost profits. As for the gross revenue, the district court adopted Jalbert's calculations in their entirety. As for the expenses, the district court adopted Jalbert's calculations with one change: it added an additional "$7.00 per acre in marketing costs" to Jalbert's figure, which amounted to total costs of $361.26 per acre per month. Under the district court's calculations, there was a net profit of only $35.35 per acre per month, which amounted to "total damages" per year of $28,280. The district court tripled this amount and found: "For the loss of the ability to rent the land for three years due to the defamation by [Kellen], [Green] suffered special damages of $84,840.00."

Kellen's primary argument as to why Jalbert's opinion lacked foundational reliability is that Jalbert "fail[ed] to include costs of equipment in determining loss of profits." In analyzing this argument, we apply the three-step foundational-reliability analysis from *Doe*.

"First, the district court must analyze the proffered testimony in light of the purpose for which it is being offered." *Id.* Jalbert's opinion satisfies the first step

6

because his testimony was offered for the purpose of determining special damages, and his testimony fairly does that.

"Second, the [district] court must consider the underlying reliability, consistency, and accuracy of the subject about which the expert is testifying." *Id.* at 168. Jalbert was familiar with Green's farming operation, as he had done Green's accounting for three years and had prepared his 2011 and 2012 tax returns. Based on Jalbert's knowledge of Green's farming operation and his accounting expertise, his calculations appear to include the appropriate inputs for gross revenue and expenses. Kellen asserts that Jalbert's opinion was flawed because he did not include equipment costs as an expense. We disagree. Green's equipment costs were fixed costs, not variable costs, because he would have incurred them regardless of whether he was farming the additional 800 acres. *See, e.g.*, *Pan Asia Venture Capital Corp. v. Hearst Corp.*, 88 Cal. Rptr. 2d. 118, 124 (Cal. Ct. App. 1999) ("Fixed costs are those that do not vary with changes in output, while variable costs are those that do vary with changes in output."). Jalbert appears to have been correct to include only variable costs in his calculation of expenses. *See, e.g.*, *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.*, 155 S.W.3d 50, 56 (Mo. 2005) ("[I]n tort actions, variable expenses, not fixed expenses, should be deducted from estimated lost revenues in the calculation of lost profits damages. These variable expenses are expenses that are tied directly to the unit of business or property damaged as a result of the defendant's actions.").

Kellen also argues that Jalbert's opinion lacked foundational reliability because his opinion as to the 2013 future damages was based on only two years of data. "Generally,

7

evidence of future damages may be admitted if there is a reasonable basis for their determination." *Tate v. Scanlan Intern., Inc.*, 403 N.W.2d 666, 673 (Minn. App. 1987), *review denied* (Minn. May 28, 1987). Future damages that are "remote, speculative or conjectural" may not be admitted. *Id.* "However, the law does not require mathematical certainty in the proof of loss, but only proof as to a reasonable certainty." *Id.*

Kellen asserts that because the farming business is "unreliable" and "volatile," it takes more than two years of data to make a reasonable prediction. This argument is unpersuasive. Kellen does not specify how many years of data are necessary. Moreover, he refers to facts outside the record to undermine the reliability of Jalbert's opinion, such as his assertion that 2011 and 2012 were "the best two years . . . maybe in the history of farming." We conclude that Jalbert's opinion as to future profits did not lack foundational reliability simply because it was based on two years of data. Therefore, Jalbert's opinion satisfies the second step.

"[Third,] the proponent of evidence about a given subject must show that it is reliable in that particular case." *Doe*, 817 N.W.2d at 168. For similar reasons, Jalbert's opinion satisfies the third step. We conclude that Kellen has made no persuasive argument showing that Jalbert's expert opinion lacked foundational reliability.

Kellen also argues that, because Jalbert calculated only one year of future loss, it was improper for the district court to simply multiply that figure by three to arrive at its special-damages determination. Kellen points out that crop prices, weather, planting conditions, and other factors affect a farmer's profit. But, what is required when making a special damages award is "proof as to a reasonable certainty" of the future loss, not

8

"mathematical certainty in the proof of loss." *Tate*, 403 N.W.2d at 673. Moreover, "[l]ost profits are recoverable if the business or venture upon which anticipated profits are claimed is such as to support an inference of definite profits grounded upon a reasonably sure basis of facts." *Id.* at 674. Perhaps it would have been preferable for the district court to base its three-year special damages award on more than two years' worth of data. At the same time, Green had 30 years of farming experience at the time of trial, and the district court likely took this into account when determining whether Green should be awarded special damages for "definite profits grounded upon a reasonably sure basis of facts." *Id.* In rejecting Kellen's argument below, the district court emphasized that "[f]uture damages must be based upon the reasonable information that was in evidence" at the time of trial. We conclude that, under these facts, the district court did not err by awarding Green a total of three years of special damages.

### C.    Jalbert's testimony was helpful to the trier of fact.

Jalbert had a special knowledge of accounting and farming that the district court did not have, and his expert testimony gave the district court a basis to determine Green's special damages. Jalbert's testimony was therefore helpful to the trier of fact.

We conclude that the district court did not abuse its discretion by admitting Jalbert's calculations into evidence and relying upon Jalbert's opinion to determine the amount of Green's special damages because: (1) Jalbert was an expert; (2) Jalbert's expert opinion had foundational reliability; and (3) his opinion was helpful to the district court.

9

**II.**

Kellen argues that the district court erred by denying his motion for a new trial or for amended findings of fact. We review a district court's denial of a motion for a new trial or for amended findings of fact for an abuse of discretion. *Zander v. Zander*, 720 N.W.2d 360, 364–65 (Minn. App. 2006), *review denied* (Minn. Nov. 14, 2006).

Kellen asserts that the district court erred by relying on Jalbert's opinion instead of that of Kellen's expert. We defer to the district court's determination of the weight and credibility of expert witnesses. *In re Paternity of B.J.H.*, 573 N.W.2d 99, 104 (Minn. App. 1998); *see also Dostal v. Curran*, 679 N.W.2d 192, 197 (Minn. App. 2004) (Randall, J., concurring specially) ("Put simply, the resolution of conflicting expert opinions at trial is for the [factfinder]."), *review denied* (Minn. July 20, 2004). In its order denying Kellen's motion for a new trial or amended findings, the district court found that Jalbert's testimony was more credible than Kellen's expert's testimony. The district court explained that Jalbert's opinion "was more specific as to the actual raw data relating to [Green's] prior farming operation," while Kellen's expert "seemed to have less knowledge of [Green's] specific operation and the financial data generated therefrom." We conclude that the district court did not abuse its discretion by denying Kellen's motion on this ground.

Kellen next argues that the district court erred by not reopening the record to consider evidence that allegedly tended to impeach J.K.'s trial testimony. "Generally, newly discovered evidence must have been in existence at the time of trial but not known to the party at that time." *Zander*, 720 N.W.2d at 365 (quotation omitted); *see also* Minn.

10

R. Civ. P. 59.01(d). "Moreover, newly discovered evidence which is merely contradictory, impeaching, or cumulative cannot be made the basis for a new trial except in extraordinary cases." *200 Levee Drive Ass'n v. Cnty. of Scott*, 532 N.W.2d 574, 578 (Minn. 1995) (quotations omitted). In his motion for a new trial or amended findings, Kellen offered evidence allegedly showing that J.K. lied when he testified that the reason he did not renew the lease with Green was because of Kellen's defamation. The real reason Green lost the land, Kellen asserts, is simply because Green was outbid. In its order denying Kellen's motion, the district court determined that this evidence was known to Kellen at the time of trial and could have been used to impeach J.K. at that time. We agree that this evidence was not newly discovered and therefore could not be the basis for a new trial. *See Zander*, 720 N.W.2d at 365. Moreover, this evidence was "outside the district court record and therefore could not be considered by the district court in determining whether to amend its findings." *Id.* We conclude that the district court did not abuse its discretion by denying Kellen's motion on this ground.

Finally, Kellen claims that the district court erred by not reopening the record in light of allegedly "newly discovered facts" that show that Green failed to mitigate his damages by not rebidding on J.K.'s land when the new tenant broke the lease after the first year. Kellen's evidence is not newly discovered evidence because it did not exist at the time of trial. *Id.* Moreover, Kellen's argument is speculative because the evidence in the record suggests that J.K. would not have allowed Green to rent the land in 2014 for

11

the same reason he did not allow Green to rent the land in 2013.  The district court did not abuse its discretion by limiting its decision on remand to what was in the trial record.

**Affirmed.**